OLSEN v. CITIZENS RAILWAY COMPANY, Appellant.

Division Two, November 28, 1899.

1. **Negligence**: STREET CAR: FIRES: RIGHT OF WAY. It is a duty which a street car company owes its passengers, that motorman and conductor on one of its cars must use every effort that a very prudent person would exercise under like circumstances to avoid collision with a hook-and-ladder company's wagon on its way to a fire. Such wagon has the right of way, and if a passenger is injured because either the conductor or motorman fails to exercise such care, the company is liable for the injury to the passenger resulting from a collision of the wagon with the car.

2. ———: ———: SKILLFUL SERVANTS. The law requires street car companies to have skillful servants in charge of its cars.

3. ———: ———: COLLISION: PRIMA FACIE CASE. A passenger makes out a *prima facie* case of damages against a street car company for personal injuries when he shows that he was absolutely free from negligence and that he was injured while riding in a car by the collision between the car and a fire department wagon. The burden is then cast upon the street car company to show that the collision was the sole fault of those in charge of the fire department wagon.

*Appeal from the St. Louis City Circuit Court.*—HON. P. R. FLITCRAFT, Judge.

AFFIRMED.

SMITH P. GALT for appellant.

(1) The court erred in giving plaintiff's instruction number 1. (a) It lays down an entirely new rule of law, con-

cerning the duties of both the conductor and gripman, of a street railway train, in approaching an intersecting street, in this, that it compels the conductor as well as the gripman ("the servants in charge of its cars") to watch and listen for any approaching vehicle at an intersecting street, and if both or either of them "fail even in a slight degree," to use a high degree of care in doing so, then the railway is liable. (b) Even as to the duty of the gripman, this instruction is too stringent. It defined his duty to be, that he had to "exercise a high degree of care to watch and listen for any approaching vehicle" at the intersecting street, and if he "failed even in a slight degree," to do so and such "failure directly contributed to cause plaintiff's injury," then defendant is liable. The jury could not but have presumed from this instruction that at any momentary diversion of the gripman from his all-absorbing duty, as declared by the court to so "look and listen for an approaching vehicle" at the intersecting street would be a violation of his duty, as declared by the court, and would render the defendant liable. Kennedy v. Railroad, 43 Mo. App. 1. (c) This instruction does not merely require both servants to "look and listen," but "to watch and listen." (2) The court erred in giving plaintiff's instruction number 2. The question of whether defendant's "servants" were "very skillful" railroad men, was not involved in the case, and there was no evidence whatever, of what "very skillful railroad men" would have done, and the jury had no right to speculate or imagine. This instruction broadened the well established rule. (3) The court erred in refusing defendant's instruction number 1. (a) The burden of proof is upon the plaintiff. Booth on Street Railways, p. 488; Sanders v. Street Ry., 147 Mo. 411; Gillispie v. Street Ry., 6 Mo. App. 554; Railroad v. Gibson, 96 Pa. St. 83; Holbrook v. Railroad, 12 N. Y. 236; Alleghaney v. Zimmerman, 14 Pa. St. 295; Ray on Negligence of Imposed Duties, Personal, p. 146; Potts v. Street Ry., 33 Fed. Rep. 33; Quinlan v. Railroad, 4 Daly 487; Thomas v. Railroad, 15

L. R. A. 416.   (b) If the collision was caused "solely by the negligence of the driver of the hook-and-ladder wagon," defendant could not be liable.

A. R. TAYLOR for respondent.

(1)   It was the duty of the gripman and other employees to keep a vigilant watch for persons on or approaching the track and when discovered in danger to use every effort consistent with the safety of passengers to avoid striking them. Hutchinson on Carriers (2 Ed.), sec. 515e; Clark v. Railroad, 127 Mo. 208; Och v. Railroad, 130 Mo. 51.   The same rule of diligence applies to carriers by street railways as by steam railways or stage coaches.   Booth Law of Street Railways, sec. 328; Jackson v. Railroad, 118 Mo. 224; O'Connell v. Railroad, 106 Mo. 484; Sullivan v. Railroad, 133 Mo. 6.   (2) The objection is to the requirement that the men operating the car should be skillful railroad men.   If they were not skillful, the care would be futile for the safety of the passenger.   Put green shoemakers as gripman and conductor on the car and prudence or care on their part would be of little avail to carry the passengers safely.   (3)   The car was solely under the management and control of defendant's servants.   Under these circumstances the happening of the collision and the injury to the plaintiff raise the presumption of negligence against the carrier, i. e. make a *prima facie* case against the carrier.   Dougherty v. Railroad, 81 Mo. 329; Condy v. Railroad, 85 Mo. 85; Hipsley v. Railroad, 88 Mo. 352; Dougherty v. Railroad, 97 Mo. 654; Furnish v. Railroad, 102 Mo. 452; Clark v. Railroad, 102 Mo. 208; Och v. Railroad, 130 Mo. 51.

GANTT, P. J.—The plaintiff was a passenger on one of defendant's cars on its street railway on Morgan street in the

city of St. Louis, and was injured by a collision between said car and a wagon of the fire department of said city on its way to a fire.

No claim is made that the damages she recovered are excessive.

The evidence in brief was to the effect that as the car on which plaintiff was riding, was moving east on Morgan street, an engine of the fire department was going north to a fire on Ninth street. The engine passed Morgan street safely and was followed by a hook-and-ladder wagon, which was being driven very rapidly as is usual with such wagons going to a fire. As this wagon proceeded north on Ninth street the gong on it was sounded constantly and the evidence for plaintiff tended to show very strongly that it could be heard several blocks and was heard by plaintiff sitting in the car when at or near Tenth street. There was also much evidence that the people in the street and on the sidewalks screamed at the motorman and made gestures and signs to stop. Whereas defendant's evidence tended to prove the gong was not sounded and the people did not halloo to the motorman. He did not stop and when he saw the wagon approaching he undertook to avoid a collision by running his car at full speed across the intersection of the streets ahead of the approaching wagon, and the driver of the wagon seeing the car, undertook to swing around its rear to the west but failed and the pole of his wagon struck the car in which plaintiff was seated, ab ut three feet from the rear, crushed through the sides of the car and struck plaintiff as she sat on her seat and seriously injured her. The pole of the wagon broke off and one of the horses fell down.

Defendant insisted that it was the fault of the teamster on the hook-and-ladder wagon, which caused the collision. It complains of the instructions given and refused, and the examination of these will determine the merits of this appeal.

I.   The following instruction is challenged as serious error:

"1.   The court instructs the jury that the defendant by its servants in charge of its cars, in one of which the plaintiff was a passenger, was bound in law to exercise a high degree of care, as defined in the instructions, to watch and listen for any approaching vehicle at the crossing of Ninth street, where defendant's car crossed such street, and was bound also to use such care to avoid collision with any such vehicle.   And if the defendant's servants in charge of the said cars, failed even in a slight degree, to use such care, and thereby directly contributed to cause plaintiff's injury, then defendant is liable, although the jury should find from the evidence that the employees of the city fire department also failed to exercise ordinary care and thereby contributed to cause said collision."

Under the facts developed before the jury it was clearly a question for the jury to determine whether the motorman of defendant was negligent.   If he heard the gong or the shouts of the people warning him of the approach of the fire department's wagon, the most ordinary care would have dictated to him to approach the crossing of Ninth street with his car well in hand.   He must have known that it was the duty of the driver of the hook-and-ladder wagon to act with the utmost promptness, and regardless of a considerable degree of danger to himself, and that the hook-and-ladder wagon had the right of way.

The custom of giving these fire engines and hook-and-ladder wagons the right of way, grows out of the necessity in which all good citizens acquiesce.   The duty which defendant owed to plaintiff, who was its passenger, was to use every effort that a very prudent person would have exercised under the circumstances to have averted injury from plaintiff.   This duty was not restricted solely to the gripman.   It devolved upon the conductor also.   If the conductor heard as plaintiff heard the fire gong and shouts, and his car seemed to be approaching a fire

it was his duty to cooperate with the motorman in avoiding the collision.

There is nothing novel in the instruction. It correctly affirms the duty of defendant and its servants and employees. [Bunyan v. Street Ry., 127 Mo. loc: cit. 18.]

II. Complaint is likewise made of the plaintiff's second instruction, which is in these words:

"2. Although the jury should find from the evidence in this case, that the employees of the city fire department did not exercise ordinary care in driving the hook-and-ladder wagon; and although the jury should find from the evidence that such want of care (if there was such want of care) directly contributed to cause the collision by which the plaintiff was injured; yet if the jury find from the evidence that defendant's servants in charge of its car in which plaintiff was such passenger, if they had exercised a high degree of care, such as would have been exercised by very prudent, careful and skillful railroad men under the same or similar circumstances, would have averted said collision and injury, then plaintiff is entitled to recover."

It is again insisted that the negligence of defendant can only be predicated on the failure of the motorman to exercise the high degree of care. Such a rule would make a mere dummy of the conductor. We find nothing in law or reason to exempt the defendant from responsibility for all its servants in charge of its cars.

Besides the instruction is in the form almost universally adopted.

The additional objection that it required defendant to have skillful employees is without merit. The law exacts that a company using appliances which will naturally prove very dangerous if not handled skillfully, shall have competent servants in charge thereof.

III. Counsel urges that the court erred in refusing his first instruction, which reads as follows:

"1. The court instructs the jury that there is no liability on the part of the railway company defendant, to the plaintiff merely because the hook-and-ladder wagon ran into the car, and the plaintiff was injured, and has brought this suit against the company, and the jury must not presume any liability on the part of the company merely on that account, and the court further instructs the jury that the burden of proof is upon the plaintiff to prove that the collision was caused by the negligence of the gripman, as defined in the other instructions, and this she must do by a preponderance of evidence, and if the jury believe that the collision was caused solely by the negligence of the driver of the hook-and-ladder wagon, then your verdict must be for the defendant."

This instruction very adroitly informs the jury that, although this car in which plaintiff was riding was wholly under the control of defendant's servants and employees and although these cars when carefully managed do not ordinarily collide with other vehicles, yet when a collision did occur with the fire department wagon, no presumption of negligence whatever could arise which would devolve upon defendant the duty of explaining that it did not arise from its want of care.

The plaintiff being absolutely free from negligence on her part and the collision having occurred and injured her, we think a *prima facie* case was made, and the court did not err in refusing to declare the law as asked by defendant, even though plaintiff had not herself invoked this presumption. [Booth on Street Railway Law, sec. 361; Clark v. Railroad, 127 Mo. loc. cit. 210; Jackson v. Street Ry., 118 Mo. loc. cit. 224; Hill v. Street Ry., 109 N. Y. 239.]

IV. For the defendant the court instructed the jury as follows:

"6. The court instructs the jury that if they believe from the evidence that the gripman, as the train was approaching Ninth street, *was exercising that high degree of care de-*

*scribed in another instruction, and was* looking ahead and attending to his duties, as defined in the instructions, and before he reached it, he did not see or hear any persons signaling to him to stop, and did not hear the gong of the hook-and-ladder wagon, and did not know that the hook-and-ladder wagon was approaching, and that as soon as he got to Ninth street, he saw the hook-and-ladder wagon coming, and he then, *while exercising that high degree of care described in other instructions (if the jury believe from the evidence he was exercising such care)*, had good reason to believe, under all the circumstances, and did believe, that from the speed at which the hook-and-ladder wagon was coming, and the train was going, if he stopped the train or tried to stop it, it would place the train in Ninth street and in front of the approaching hook-and-ladder wagon, and there would be a collision between it and the hook-and-ladder wagon, and that if he went ahead at full speed he might avoid a collision; then the court instructs the jury that it was his duty to go ahead, and the jury will find their verdict for the defendant, notwithstanding the hook-and-ladder wagon ran into the trailer car, and the plaintiff was injured thereby.

"7.   The court instructs the jury that they are the sole judges of the credibility of the witnesses and the weight of testimony is not to be declared merely by the number of witnesses on one side or the other; and the court further instructs you that in weighing the testimony, you should take into consideration the bias or feeling of the witnesses, if any was shown, in favor of or against either party to the suit, and their manner of testifying, and their opportunity at the time to correctly see how the collision occurred, and their ability now to accurately describe the same; and if the jury believe that any witness has knowingly testified falsely to any material fact in the case, then the jury are justified in disbelieving and disregarding the whole or any part of such witness's testimony, *but they are not bound to do so.*"

VOL. 152 mo—28

The court amended the two instructions by inserting the words in italics.

The sixth instruction as above given obviates all objections to the court's refusal to give the second instruction prayed by defendant, and puts the law in a small compass as favorably as defendant could ask.

V. There was no error in permitting the witness to state how far the gong was heard and could be heard. In this way only could plaintiff demonstrate to the jury that the gripman by the exercise of ordinary care could also have heard the gong. It was clearly competent.

As to the instruction as to the duty of the driver of the hook-and-ladder wagon, plaintiff was not concerned. The burden was cast upon defendant after the proof of the collision to show that it was the sole fault of the hook-and-ladder company. It was essential for it to show not only that the driver of that wagon was negligent, but that its own negligence in no way contributed to the collision. It was for the latter only that plaintiff sought to hold it responsible.

The cause was fairly submitted to the jury, and their finding must control in this court.

The judgment is affirmed. BURGESS, J., concurs; SHER-WOOD, J., absent.