ONEY B. DOUGLAS, Respondent, v. ST. LOUIS PUBLIC SERVICE COM-
PANY, a Corporation, Appellant, No. 41675—231 S. W. (2d) 157.

Division Two, June 13 1950.

Motion for Rehearing, or in the Alternative, for a Ruling on Claim of
Excessiveness and an Order Limiting Retrial to Issue of Liability Only
Overruled, July 10, 1950.

*Coburn, Storckman & Croft* and *Clem F. Storckman* for appellant.

*Louis Yaffe* for respondent; *Orville Richardson* of counsel.

872

WESTHUES, C.—Plaintiff sued the defendant St. Louis Public Service Company and the Vollmar-Figge Drayage Company to recover damages for personal injuries alleged to have been sustained as the result of a collision of a streetcar owned by the Public Service Company and a tractor-trailer of the Drayage Company. A jury returned a verdict for plaintiff in the sum of $9,000 against the Public Service Company. The jury found in favor of the other defendant, the Drayage Company. The Public Service Company appealed from the judgment against it.

Appellant claims the trial court erred in giving plaintiff's instruction No. 1; in refusing its instruction F; in not admitting exhibit A which was a card signed by the driver of the truck involved in the collision. Appellant also contends that the evidence failed to show any causal connection between plaintiff's alleged injury and the collision; and that the verdict was grossly excessive.

We find little dispute in the evidence with reference to the manner in which the collision occurred. Plaintiff on the afternoon of August 5, 1948, was a passenger on one of appellant's streetcars traveling in a westerly direction on Park Avenue. A tractor-trailer truck of the Vollmar-Figge Company was being driven south on Missouri Avenue which intersects Park Avenue. The collision of the two vehicles occurred at this intersection; the left front end of the streetcar came in contact with the left rear side of the trailer; the tractor-trailer had almost cleared the tracks at the time of the collision. The tractor-trailer was driven south over the streetcar tracks from Missouri Avenue and thence east on Park Avenue. The impact was described as a brushing or glancing blow. The streetcar was stopped about 20 feet beyond the point of impact. The point of collision was fixed by the witnesses as somewhere between the east curb line of Missouri Avenue and 20 feet east of said curb line.

Plaintiff testified that the collision caused her to be thrown against an iron bar at the front end of the car and to be injured. She had been sitting on the front seat. The details of her alleged injuries need not be discussed since the determination of this case renders that unneces-

sary. Plaintiff called the motorman of the streetcar and the driver of the truck as witnesses. A number of passengers also testified.

. The operator of the streetcar testified that as he approached Missouri Avenue at a speed of about 20 miles 'per hour, he noticed the truck standing still on Missouri Avenue a little north of the north line of Park Avenue; that when the streetcar was about 100 feet or so from the intersection the driver of the truck started to drive across the tracks at Park Avenue; that he, the witness, immediately sounded the gong of the car and applied the brakes; that at the time of the impact the streetcar was traveling about 2 or 3 miles per hour and the truck about 10 miles per hour. This witness stated that the truck turned east on Park Avenue; that this caused the rear end or trailer part of the unit to move in a southeasterly direction, thus shortening the distance in which to stop the streetcar to prevent a collision. This fact was corroborated by a number of witnesses including the driver of the truck. The point of impact, as fixed by the witnesses, was at least as far east as the east curb line of Missouri Avenue. This also corroborated the evidence of the motorman that the rear end of the trailer had moved eastwardly. The motorman testified he could and did stop the streetcar within about 100 feet. A number of witnesses gave testimony corroborative of that of the motorman with reference to the manner in which the collision occurred.

The truck driver testified that he did not stop the truck before entering the intersection; that he was driving about 10 to 15 miles per hour and when he was at the north line of Park Avenue, he noticed the streetcar about 200 feet to the east; that it was approaching at a speed of approximately 20 miles per hour; that he drove across the tracks and when the tractor section had crossed the tracks, he turned it eastward and when the trailer section was almost across the tracks, the streetcar struck it. He testified he did not stop at the intersection because there were no stop signs there and the motorman had plenty of time and distance in which to stop his car. He stated if the trailer had been four feet further south, no collision would have occurred. The evidence of the truck driver was supported by evidence of other witnesses.

In such circumstances it was a question for a jury to decide whether either defendant was negligent or whether both were. There was substantial evidence to sustain a verdict against both defendants. On the other hand there was substantial evidence for a jury to find one of the defendants not negligent. If the truck driver correctly related what occurred, then the motorman was negligent. If the evidence of the motorman be accepted as the true version of the collision, the truck driver was negligent.

██ Plaintiff's case was submitted to the jury under the humanitarian doctrine. Appellant insists that plaintiff's case was one of primary negligence and therefore the instruction was erroneous.

There is no doubt that it was not necessary for plaintiff to rely upon the humanitarian doctrine. However, it was not error against the appellant to submit the case under this doctrine. The jury was authorized to find that the motorman saw or could have seen the tractor-trailer crossing the tracks in time for the motorman to have slackened the speed of the streetcar and to have averted a collision. Appellant urges further that instruction No. 1 was confusing, conflicting, and misleading. This contention is based to some extent on the following portion of the instruction: "* * * the operator of the streetcar saw, or by the exercise of the highest degree of care, could have seen the tractor-trailer and plaintiff in a position of imminent peril of being collided with and injured." It is urged that the motorman could not have seen plaintiff who was a passenger on the streetcar and the truck at the same time; also that there was no danger of plaintiff's coming into collision with the truck. The trouble with this instruction is that it is not applicable to the facts proven. The motorman was, of course, required to see obstructions on the tracks and to prevent, if he could do so, the streetcar colliding therewith. On a retrial the instruction, if the case is again to be submitted under the humanitarian doctrine, should be worded so as to be applicable to the facts in evidence. Appellant says that the instruction required the motorman to exercise the highest degree of care when, in fact, he was required only to use ordinary care as to the tractor-trailer. Defendant owed plaintiff, who was a passenger on the streetcar, the highest degree of care, therefore, the motorman was required to exercise the highest degree of care in discovering objects on the tracks with which the car was likely to collide. Kappico v. St. Louis Public Service Co., 41 S. W. (2d) 826, l. c. 828(1); Olsen v. Citizens' Ry. Co., 152 Mo. 426, 54 S. W. 470.

Appellant assigns error on the part of the court in refusing to give instruction F. By this instruction appellant sought to submit to the jury its defense. It provided in substance that if the tractor-trailer was caused to be driven into the intersection and turned eastward diagonally across the tracks for westbound streetcars into the path of the oncoming streetcar, and that in so doing the distance between these vehicles was shortened so that the operator of the streetcar, in the exercise of the highest degree of care, was unable to stop or to slacken the speed of the streetcar sufficiently to have avoided the collision then a verdict for the appellant was authorized.

As the statement of facts above will show, appellant introduced evidence that the tractor-trailer when first seen by the motorman was standing still; that it was started when the streetcar was 100 feet from the intersection; that it required about 100 feet in which to stop the streetcar; that at the time of the collision the car was going only 2 or 3 miles per hour. It was admitted that if the trailer had been 4 feet further south, the collision would not have occurred. No

instruction was given submitting appellant's defense. This instruction should have been given. If the above facts were true then the driver of the truck was negligent. The instruction offered was also a converse of plaintiff's instruction No. 1. Appellant was entitled to submit its defense by appropriate instruction. Johnson v. Hurck Delivery Service, Inc., 353 Mo. 1207, 187 S. W. (2d) 200, l. c. 202(2); Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S. W. (2d) 742, l. c. 745, 746(3-6).

Respondent argues that instruction F narrowed the issues to the single question of whether the motorman could have avoided the accident after the truck was already turned eastward diagonally across the tracks. We do not so read the instruction. It reads "* * * at the time defendant Vollmar-Figge's tractor-trailer mentioned in the evidence drove out into the intersection from north to south and turned eastwardly * * *." Again respondent says the instruction assumed that turning of the tractor eastward shortened the distance between the truck and the streetcar. As we view it the instruction left that question to the jury to find. Furthermore, all the witnesses agreed the collision occurred a number of feet east of where the tractor-trailer crossed the tracks. One witness testified he was sitting in the middle portion of the streetcar and saw the tractor section beside the car when it (the streetcar) collided with the trailer. We find the instruction supported by evidence and also that it is not subject to the criticisms leveled against it by respondent.

 We need not discuss at length the assignment of error that the evidence did not show any causal connection between the injury and the negligence of the appellant. Suffice it to say, a jury could find either way under the evidence in this record. Neither need we discuss the question of whether the verdict is excessive since we are remanding the case.

 Exhibit A, which the trial court refused in evidence, was a card which had been signed by the truck driver at the scene of the collision. He testified that he did not read it and that any admission of fault stated therein was not made; that he simply signed the card at the request of the motorman and was led to believe it contained no admissions. The only ground upon which this card could be admitted in evidence is for the purpose of impeaching the evidence of the truck driver. If offered for that purpose it should be admitted together with his explanation and a jury can determine the matter.

For error in refusing to give instruction F, the judgment is reversed and the case remanded for retrial. It is so ordered. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.