J. D. HICKS, Respondent, *vs.* THE PACIFIC RAILROAD COMPANY, Appellant.

1. *Railroads—Injuries to child—Platform—Trespass—Contributory negligence—Liability of company, measure of.*—In suit against a railroad company for injuries to a child, it appeared that at a station where the accident occurred, by direction of his father the boy was in the habit of driving stock from the track before the arrival of trains, and would then seat himself on the platform of the station, and was accustomed to get on freight trains on their arrival, and ride to the switch; that the platform had been built by the company for the accommodation of passengers and persons having business with the road, and that the lad had been frequently told to keep off the platform; that while standing there he was struck and injured by a timber projecting from a freight car: *Held*, that the direction was under the circumstances merely admonitory and not imperative in such sense as to make him, by reason of the order, a trespasser; that his having no right or business there did not constitute him a trespasser, and his being there was not such negligence as in law to contribute directly to his injury; that even supposing the child were a trespasser, the liability of the company to him for injuries would not be restricted to those which were wanton, but would embrace all such as resulted from want of ordinary care.

2. *Railroads—Risks in running past stations, etc.—Caution required.*—The care and caution required of railroad companies in running their trains are commensurate with the danger to persons and property incident to that mode of conveyance; and in running through towns and cities and over public crossings, or in the vicinity of railroad stations, they must exercise care and caution commensurate with the risks of accidents at such places.

*Appeal from Jackson County Circuit Court.*

*E. A. Anderson & Thos. J. Portis*, for Appellant, cited and commented on: 59 Penn. St., 129; 18 C. B. 46; 7 Met., 596; 12 Id. 485; 31 Vt. 79; Beadle vs. Eastern Counties R. R. Co., 2 C. B. N. S., 509; Case vs. Storer, 4 Exch., 31, 319; Warfell vs. The South Wales R. R. Co., 8 C. B. N. S., 525, 534, (E. C. L. R., vol. 98); Bolch vs. Smith, 7 Hurl. & Nor., 736 (1862), affirming Hounsell vs. Smyth, 7 C. B. N. S., 731 (E. C. L. R., vol. 97); Smith vs. St. Joe, 45 Mo. 449; Barker vs. Midland Rly. Co., 18 C. B. 58 (E. C. L. R., vol. 86); Winterbottom vs. Wright, 10 M. & W., 109; Sweeney vs. Old Colony and Newport R. R. Co., 10 Allen, 368; Gautret vs. Egerton, 2 Com. Pleas, 374, (1867); Stone vs. Jackson, 16 C. B., 199 (E. C. L. R., vol. 81); Corby vs. Hill, 4 C. B. (N. S.), 558,

(E. C. L. R., vol. 93) ; Stout vs. R. R. Co., 17 Wall. 657 ; See 8 Am. Law Reg., [U. S.], 737, *note ;* Brown vs. Han. & St. Joe. R. R. Co., 50 Mo. 461 ; Dean vs. Clayton, 2 E. C. L. 461, S. C., 7 Taun. 489 ; Wilson vs. Brett, 11 M. & W. 113 ; Robinson vs. Cone, 22 Vt. 213 ; Johnson vs. Patterson, 14 Conn. 1 ; Birge vs. Gardiner, 19 Conn. 507 ; Dixon vs. Bell, 1 Clark, 287–289 ; Lynch vs. Nurdin, 1 Ad. & Ell. N. S. 29, 38; 9 (41 E. C. L., 422, 426) ; Vanderplank vs. Miller, 1 Moo. & Malk. 169 (22 E. C. L., 280) ; Pluckwell vs. Wilson, 5 Car. & P. 375 (24 E. C. L., 368) ; Luxford vs. Large, 5 Car. & P. 421 (24 E. C. L. 391); Williams vs. Holland, 6 Car. & P., 23 (25 E. C. L. 261) ; Woolf vs. Beard, 8 Car. & Pa., 373 (34 E. C. L., 435); 2 Stephens, N. P., 10, 18 ; Rathborn vs. Payne, 19 Wend. 399 ; Cincinnati, Hamilton & Dayton R. R. Co. vs. Waterson & Kirk, 4 Ohio St., 424 ; New Haven St. & Trans. Co. vs. Vanderbilt, 16 Conn. 420 ; Sills vs. Brown, 9 Car. and P. 601 (38 E. C. L.), 245 ; Vere vs. Lord Cawdor, 11 East., 568 ; Wadhurst vs. Damane, Cro. Jac., 45 ; Barrington vs. Turner, 3 Lev. 28 ; Mayor of Colchester vs. Brooks, 7 Ad. & El., (53 E. C. L., 369) ; Davies vs. Mann, 10 M. & W., 546 ; Karle vs. K. C., St. Jo. & C. B. R. R. Co., 55 Mo. 484 ; Isabel vs. H. & St. J. R. R. Co., 60 Mo. 482 ; Maher vs. P. R. R. *ante,* p. 367 ; Keefe vs. Milwaukee & St. P. R. R. Co., 2 Cent. Law Jour. (March 12th, 1875), 170 ; Stout vs. Sioux City R. R. Co., 2 Dil. 294 ; Holmes vs. N. E. R. R. Co., 4 Exch., 254 ; Gillis vs. R. R. Co., Law Reg., 729, *note.*

*James K. Shelby*, for Respondent, cited : Stout vs. Sioux City & P. R. R. Co., 2 Dil. 294 ; Keefe vs. The Milwaukee & St. Paul R. R. Co., Centr. Law Journ., March 12, 1875 ; C. & A. R. R. Co. vs. Garvy, Adm'r, 58 Ill. 83 ; Isabel vs. Hann. & St. Joe. R. R. Co., 60 Mo. 481 ; Doss vs. Mo.. Kas. & Texas R. R., 59 Mo. 27 ; R. R. Co. vs. Stout, 17 Wall. 657.

HENRY, Judge, delivered the opinion of the court.

This was an action by plaintiff to recover against defendant damages for a personal injury received under the following circumstances :

Plaintiff, at the time of the injury, was between twelve and fourteen years of age. On the evening of August, 1872, plaintiff was at defendant's platform at Lee's Summit, in Jackson county, when a freight train from the east came in on defendant's road.

It was about dusk, and a piece of timber with which one of the cars was loaded, projecting over the side of the car from twenty inches to two feet, struck plaintiff and broke his nose and otherwise injured him.

The plaintiff testified that he was about the middle of the platform when struck. Another witness testified that he (witness) stood in the middle of the platform when the car passed him, and was not hit by it. There was uncontradicted evidence that the agents of the company had repeatedly told plaintiff to keep off the platform. His father lived near the depot, and this boy and others were in the habit of going there when trains arrived, and jumping on the freight trains for a ride. He had no business there that evening. He was sent to the road by his father about half an hour before the arrival of this train to drive some of his hogs off of the track, and the evidence was that he would drive the hogs a short distance from the track and then take a seat on the end of the platform.

The train came in on the main track, and the platform adjoined this track. The evidence shows that between Pleasant Hill and Lee's Summit, a distance of twelve miles, there are five bridges, the last one about four miles east of Lee's Summit. This bridge is twelve feet and nine inches clear on the inside; cars are nine feet wide. At Pleasant Hill the cars were inspected and no projecting timber seen, and not until the plaintiff was injured was it known that the timber was projecting.

The platform was built by the defendant for the accommodation of passengers getting on and off its trains, and of such persons as had business with defendant at its depot.

The court, of its own motion, refusing six asked by defendant, gave the following instructions:

1. " If the jury find from the evidence that the platform, upon which the plaintiff was standing when injured, was the place used

by persons on entering and leaving the cars of defendant at Lee's Summit, and also for receiving and discharging freight, and that prior to that time, with the assent of defendant, persons not having business with the defendant were in the habit of standing on said platform, upon the arrival and departure of the trains of defendant, and that plaintiff, while standing on said platform, was struck by a stick of timber loaded on one of the cars of defendant, and projecting from the side of the car over said platform, or a part of it, and that the projection of said stick of timber was dangerous to persons standing on said platform, and was not *loaded on said car in the usual manner*, and no warning was given, to persons standing on said platform, by any employe of defendant of the danger of said projecting stick of timber ; and if you further find from the evidence, that said plaintiff was not guilty of negligence, on his part, which contributed directly to the injury he received, then the jury will find for the plaintiff, and assess his damages at such a sum as you may believe from the evidence he has sustained, not exceeding the amount claimed in the petition.

" But if the jury shall believe from the evidence that the stick of timber, which occasioned the injury to plaintiff, worked out of its proper place on the side of defendant's cars, by accident and without the fault of the employees of defendant, and its condition was unknown to the conductor of the train, or other employees of defendant on said train, and could not, by the use of ordinary care on the part of the employees of defendant on said train, have been discovered, and if the jury further find that said car was loaded in the usual way, then your finding will be for the defendant.

" Or, if you should find that the injury complained of was caused by the negligence of the plaintiff contributing directly to produce said injury, then your verdict will be for the defendant.

" Or, if you shall find that the plaintiff, prior to the time he was injured, had been in the habit, with others, of getting on the trains of the defendant while approaching said depot, for the pur-

pose of riding thereon upon switch of defendant, and that plaintiff had been warned by the employees of defendant against the danger of their getting on the trains of defendant, and if you shall further find that, at the time plaintiff was injured, he was endeavoring to get on the train of defendant, and in doing so was injured, and was thus guilty of negligence which contributed directly to produce the injury he received, then your finding will be for defendant."

There was a verdict for plaintiff for twenty-one hundred dollars.

A motion for a new trial was filed by the defendant, and plaintiff remitting nine hundred dollars of the amount found by the jury, the court overruled the motion for a new trial and entered a judgment for plaintiff for twelve hundred dollars, from which defendant appealed.

The right of plaintiff to recover in this case does not depend upon the principle of law applicable to the case of a passenger or one who has procured a ticket to go as a passenger upon the train, who is injured while on, or getting off or on the train. The plaintiff was not a passenger, nor was he there to become such, nor had he any business with the defendant or any one else which required him to go on the defendant's platform. He had no right to be on the platform in the strict sense of the word, but was there by sufferance. Yet he was not a trespasser, and his being there was not such a negligence as the law recognizes as contributing directly to the injury. The evidence that plaintiff had been in the habit of going to the depot on arrival of trains, and getting on freight trains for a ride on the switch, and that he had been warned of the danger, and told by defendant to keep off of the platform, we do not regard as an imperative order; but, under the circumstances, as only advisory, and not making plaintiff a trespasser when he went on the platform.

In Giles vs. the Penn. Railroad Co. (59 Penn. 129), it was held, and we think correctly, that " the platform of a railroad company, at its station or stopping place, is in no sense a public highway. There is no dedication to public use as such. It is a

structure erected expressly for the accommodation of passengers arriving and departing on the train."

That was a case of injury received by one from the falling of a platform at a railroad station where a large concourse of people had assembled to see Andrew Johnson, and the distinguished gentlemen who accompanied him, when he visited the west while President of the United States.

The court further observed in that case: "The plaintiff may not have been technically a trespasser. The platform was open; there was a general license to pass over it. But he was where he had no legal right to be; his presence there was in no way connected with the purposes for which the platform was constructed. Had it been the hour for the arrival or departure of a train, and he had gone there to welcome a coming or speed a parting guest, it might very well be contended that he was there by authority of defendant, as much as if he was actually a passenger, and it would then matter not how unusual might have been the crowd, the defendant would have been responsible. As to all such persons, to whom they stood in such a relation as required care on their part, they were bound to have the structure strong enough to bear all who should stand on it. *As to all others, they were liable only for wanton injury.*" The judge who delivered the decision in that case, it will be seen, in a mere *dictum* however, occupied the extreme ground in favor of railroad companies, holding that one going upon a platform of a company, without having any business there, cannot recover for an injury received in consequence of the carelessness or negligence of the employees of the company, but only for injury *wantonly inflicted.* If that be the law, the judgment in this case cannot stand. We think that the conclusion of the court in that case was correct, and the argument to show that defendant was not liable on the facts proven is unanswerable, but the doctrine announced in that portion of the paragraph we have quoted and italicized we do not think sustained by authority.

In Commonwealth vs. Power (7 Met. 600), it was held that the opening of depots and platforms for the sale of tickets, for the assembling of persons going to take passage or landing from the

cars, amounts in law to a license to all persons, *prima facie* to enter the depot, and that such entry is not a trespass, but that it is a license conditional, subject to reasonable and useful regulations; and on non-compliance with such regulations, the license is revocable, and may be revoked, either as to an individual or as to a class of individuals, by actual or constructive notice to that effect.

In Kerwhacker vs. C. C. & C. R. R. Co. (3 Ohio 175), Barttey, Judge, delivering the opinion of the court, says, that " a maxim of law, tested by the wisdom of centuries, exacts of every person, in the enjoyment of his property, the duty of so using his own as not to injure the property of his neighbor. Hence the general rule, that in all cases where damage occurs to another, by the negligence or improper conduct of a person in the exercise of his particular trade or business, an action is maintainable. How far this doctrine is applicable to railroad companies, in the exercise of their peculiar business, is the question presented before us."

That was an action against a railroad company for killing hogs that were on the track and run over by a train. It was not a right of the owner to have his hogs on the track, although he had a right to let them run out.

The court below refused to instruct that if defendant's agents could, in the use of ordinary care, have easily and safely avoided the destruction of the property, by checking the speed of the train, the defendant was liable, but instructed that as the hogs were improperly on the railroad, the defendant's agents were not bound to check the ordinary and usual speed of the cars, or use any means or caution to save plaintiff's property. The court held that " the position taken by the court below, assuming the animals to have been unlawfully on the road, would justify not only a wanton disregard of the plaintiff's property, but even an intentional destruction of it by defendant's agents, providing it occurs while running the train over the railroad in the ordinary way and at the usual speed."

A person walking on the track of a railroad, at other points than a public crossing, is a trespasser; and yet it has never been

held in this State that the company is only liable for wanton injuries inflicted upon him by its employees; but this court has uniformly held, that if injured or killed under those circumstances by the negligence of the employees of the company running the train, he or his representatives may recover. It was so held in Isabel vs. Han. &. St. Jo. R. R. Co., 60 Mo. 480. The instruction given by the court below, and objected to by defendant, was, that "though Isabel had no right to be on the track of defendant's railroad, yet the fact that he was upon their property did not discharge them from the observance of due care towards him; nor did it give the defendants, nor their employees, any right to run over him, if that could have been avoided by the exercise of ordinary care and watchfulness."

Wagner, J., who delivered the opinion of the court, said: "There can be no objection urged against the instruction—no doctrine is better established in this State than the principle it enunciates."

The case of Maher vs. Pacific R. R. Co. is to the same effect, as are all the cases decided by this court growing out of injuries received from a running train by persons on the track of the road. We are not aware that any court in this country or in England has held that in such cases the company is only liable for injury wantonly inflicted by defendant.

What distinguishes the case at bar, in principle, from those cases? Even admitting that plaintiff was a trespasser, when on the platform, he was no more a trespasser than one on the track of the company, and the same principle of law governs both cases. The argument of defendant's counsel would only hold the company liable in a case where the conductor of the train would be held guilty of murder or manslaughter in one of the degrees, and we think he is not supported by the decision of any superior court in this country or in England.

" In Isabel vs. Han. & St. Jo. R. R. Co., *supra*, the court says our decisions have been uniform; that, although a person may be improperly or unlawfully on the track of a railroad, still the fact will not discharge the company or its employees from the observance of due care, and they have no right to run over and

kill him, if they could have avoided the accident by the exercise of ordinary caution or watchfulness."

Does the instruction given by the court below conflict with these views? It hypothecates the right of plaintiff to recover upon the following facts to be found by the jury : that the platform was the place used by persons on entering and leaving the cars, and for receiving and discharging freight ; that prior to that time, with the assent of defendant, persons not having business with defendant were in the habit of standing on said platform upon the arrival and departure of the trains ; that plaintiff, while standing on said platform, was struck by a stick of timber loaded on one of the cars and projecting from the side of the car, over the platform, or a part of it ; that the projection of said timber was dangerous to persons on said platform ; that no warning was given by any employee of defendant of said danger, and that said plaintiff was not guilty of negligence which contributed directly to the injury he received. They were further instructed that if the stick of timber worked out of its proper place by accident, and without the fault of defendant's employees, and its condition was unknown to defendant's employees on said train, and by the use of ordinary care, could not have been discovered, and that the car was loaded in the usual way, the plaintiff could not recover. A higher degree of care is required of a railroad company in regard to passengers getting on or off a train at its depot, than they are held to, as to persons there merely to gratify curiosity ; but we cannot subscribe to the doctrine, that even as to a trespasser on the platform any more than a trespasser on the track of the company, it is only liable for wanton or intentional injuries to persons so trespassing.

In the case of Birge vs. Gardiner (19 Conn. 507), which was an action against defendant for negligently placing and leaving a heavy gate so that plaintiff, a child under seven years of age, was badly injured by its falling upon him, Church, C. J., said: "We do not decide whether, in this case, the plaintiff was a trespasser or not. There are many acts, deemed acts of trespass, which involve civil liability, where there is no fault, and on the ground that where one of two innocent parties must suffer, he who is the

proximate cause of the injury must be responsible for it.   But this is not a case between faultless parties.   The gross negligence of the defendant is here the cause of action, and he alone is responsible for the entire consequence of it, unless there has been *fault* on the part of plaintiff."

In that case the gate was on defendant's premises, and plaintiff put his hand upon and shook it, when it fell upon him ; yet he recovered a judgment, which was affirmed in the Supreme Court of Errors.   The cases cited to show that where one permits another to go on or over his premises, the former is not liable to the latter for injuries received from falling into a pit, which had been left open on the premises, and similar accidents are not in point.

If one go upon the railroad track at a point where he has no right to be, and be injured by falling into a ditch which the company had left open, or in consequence of a broken rail on the track, the liability of the company would be determined by the same principle which governs in the class of cases cited.   Their duty to keep their track in repair is not a duty to trespassers on the track, and they cannot recover damages for neglect of such duty.   Or if one should drive a team on the right of way, and fall into a pit or ditch left open by the company, at a point on the right of way where plaintiff was not invited but only permitted to go, those cases would be applicable ; but the case at bar rests upon different principles.

"A direct liability exists in all cases *where personal injuries* have been sustained by the neglect of duties which are of a general and public character, and where the observance of those duties is required as a matter of public security and safety." (23 Vt. 378.)

The care and caution required of railroad companies in running their trains, are commensurate with the danger to persons and property incident to that mode of transporting freight and passengers, and at some points on the road greater care is exacted than at others.   In running through towns and cities, and over public crossings, they are expected to be more careful than at other places where not so likely to injure persons or property.

In approaching stopping places where people are in the habit, for business or pleasure, of congregating, they must exercise the care and prudence which a proper regard for human life dictates, and to hold that a railroad company is only liable for wanton injury in such a case as we are considering, would encourage recklessness in the running and managing of trains, which would be intolerable. These companies not only owe a duty to passengers and others lawfully on their tracks and platforms, but a duty to the public to exercise the rights conferred upon them, with a due regard to the safety of all persons and property.

An instruction was asked by defendant to the effect that the burden of proof was on plaintiff to establish the facts, naming them, which rendered it liable to plaintiff. The instruction given by the court does not use those words, but substantially so instructed by declaring that plaintiff's right to recover depended upon the proof of those facts.

The instruction given, we think, was a remarkably clear declaration of the law, and presented the case with perfect fairness to the jury.

The judgment is affirmed. All the judges concur, except Sherwood, C. J., absent, and Judge Hough not sitting.