## LEANDER THOMPSON v. ST. LOUIS SOUTH-WESTERN RAILWAY COMPANY, Appellant.

### Division One, May 31, 1912.

1. **EVIDENCE: Conflicting Testimony: Question for Jury.** The plaintiff and his brother testify that the plaintiff was struck by a swinging door of a box car on defendant's train and injured. In such case, even though the defendant introduced much testimony to prove physical facts inconsistent with the story told by the brothers, and also proved inconsistent statements in writing, to which one brother admitted his name was signed with his own hand, yet this evidence simply presents questions of veracity for the determination of the jury, with which the Supreme Court has nothing to do.

2. **PLEADING: Statutes of Sister State.** Where no statute of the State where the cause of action arose is pleaded, the court will be guided by the laws of this State.

3. **NEGLIGENCE: Licensee on Railway Platform: Notice: Reasonable Care.** Railway companies must take notice of the conditions created by the use of their roadways or premises by others with their encouragement or permission, either express or implied, and they must use reasonable care, that is, care proportionate to the probability of injury, to avoid injuring those who may take advantage of such permission, so that, the running of a car with a loose door swinging out

over a station platform over which much of the pedestrian travel of the town was accustomed to pass, under such circumstances as to injure the plaintiff, would be an act from which the jury would be at liberty to infer negligence.

4. ———: ———: ———: **Defective Door on Car: Instructions.** Where the testimony for the plaintiff goes to show that he was struck by a car door swinging over a station platform from a moving train, and that testimony is met by that of the conductor of the train, who testifies that he twice inspected the whole length of the train just before the injury to plaintiff, standing during the last inspection about 150 feet from the place of the injury and letting the slowly moving train pass him, finding the doors in good order, it was error to give an instruction for the plaintiff predicating his right to recover upon proof of the defective condition of the door and the resulting injury only, and to refuse to instruct that if the accident could not have been guarded against by the exercise of ordinary care, the jury should find for the defendant.

5. ———: **Res Ipsa Loquitur.** The maxim *res ipsa loquitur* is founded upon the feeling that every apparent wrong resulting in injury to another which may only be palliated or explained by facts within the peculiar knowledge of the perpetrator, carries with it the proof of its wrongful character and places upon him the burden of offering a just excuse.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort*, Judge.

Reversed and remanded (*with directions*).

*S. H. West, Roy F. Britton, Wammack & Welbourn* for appellant.

(1) Plaintiff was a mere licensee to whom appellant owed no duty except not wilfully or wantonly to injure him. Wencker v. Railroad, 169 Mo. 592; Carr v. Railroad, 195 Mo. 241; Mann v. Railroad, 86 Mo. 347; Woods v. Railroad, 149 Mo. App. 507; Dowd v. Railroad, 84 Wis. 105; Gillis v. Railroad, 59 Pa. St. 143; Railroad v. Schwindling, 101 Pa. St. 261; Heinlein v. Railroad, 147 Mass. 136; Railroad v. Fairbarns, 48 Ark. 491; Railroad v. Bingham, 29 Ohio St.

364; Post v. Railroad, 123 S. W. 708; Woolwine v. Railroad, 36 W. Va. 329; Penn. Railroad v. Martin, 111 Fed. 586; Means v. Railroad, 17 Am. Neg. Rpt. 1; 1 Thompson on Negligence (2 Ed.), 946; 3 Elliott on Railroads (2 Ed.), sec. 1250; White's Personal Injuries, secs. 859, 860, 861, 862, 863, 870, 871 and 872; Sullivan v. Railroad, 97 N. W. 114. (2) When the verdict is contrary to the physical facts, a demurrer to the evidence should be sustained. Oglesby v. Railroad, 177 Mo. 296; Spiro v. Transit Co., 102 Mo. App. 250; Brown v. Lead Co., 149 Mo. App. 181. (3) Plaintiff's instruction 3 is wrong. Railroad v. Brinson, 70 Ga. 207; Railroad v. Schwindling, 101 Pa. St. 258; Railroad v. Davis, 60 S. W. 14; Hicks v. Railroad, 64 Mo. 430; Railroad v. Carr, 126 S. W. 850; Lynch v. Railroad, 112 Mo. 420; Barr v. K. C., 105 Mo. 550; Weller v. Railroad, 120 Mo. 653; Webb's Pollock on Torts (New Am. Ed.), 582. (4) Defendant's instructions 8 and 11 should have been given. Railroad v. Wade, 36 S. W. 1125; Hicks v. Railroad, 64 Mo. 430.

*Johnson & Burr* and *N. A. Mozley* for respondent.

(1) Appellant owed respondent the duty to exercise ordinary care to avoid injuring him. Ransom v. Union Depot, 142 Mo. App. 361; Ahnefeld v. Railroad, 212 Mo. 280; Hick v. Railroad, 64 Mo. 430; Fearons v. Railroad, 180 Mo. 208; Railroad v. Berry, 10 S. W. 472; Doss v. Railroad, 59 Mo. 27; Langan v. Railroad, 72 Mo. 392; Hudgens v. Railroad, 139 Mo. App. 44; Lovell v. Railroad, 121 Mo. App. 466. (2) Respondent and his brother had gone to the station to get an express package which they intended to take to their father's home where they were stopping. Hence he was there on business with the company and was rightfully there. Butler v. Railroad, 136 S. W. 729; Lovell v. Railroad, 121 Mo. App. 466;

Hudgens v. Railroad, 139 Mo. App. 44; Nelson v. Railroad 132 Mo. App. 687; Railroad v. Fairbairn, 48 Ark. 491. (3) Respondent, at the time of his injury, was walking in a well beaten path made by public user, for a period of ten years, with the knowledge and consent of appellant. Hence he was rightfully there whether he had business with the company or not and, on this ground, appellant owed him the duty of ordinary care. Ahnefeld v. Railroad, 212 Mo. 280; Fearons v. Railroad, 180 Mo. 208. (4) The use of the station platform as a foot way by the public was so extensive and general and for so long a period of time that appellant was afforded reasonable grounds to expect or anticipate the presence of persons on or near the track and it is wholly immaterial how respondent is denominated whether an invitee, licensee or trespasser, appellant owed him the duty to use ordinary care not to injure him. Ahnefeld v. Railroad, 212 Mo. 280. (5) It was gross negligence for appellant to operate its train through the populous city of Paragould and by its union station, where it had every reason to expect people would be assembled, with a box car door swinging out one and one half feet. The measure of appellant's care is controlled by the circumstances of the case. The greater the hazard the greater the care required. 33 Cyc. 779-780; Scullin v. Railroad, 184 Mo. 695; Hicks v. Railroad, 64 Mo. 430; Oates v. Railroad, 168 Mo. 544; Eswine v. Railroad, 96 Mo. 296-297; Frick v. Railroad, 75 Mo. 595; Brown v. Railroad, 50 Mo. 461; Maher v. Railroad, 64 Mo. 276. (6) Where the instructions that are given fairly cover the case and announce correct propositions of law, as is the case here, it is sufficient notwithstanding other instructions were asked and refused that stated the law correctly as applicable to the facts of the case. Railroad v. McElroy, 161 Mo. 584; Fruit Co. v. Lane, 101 Mo App. 712; Koenig v. Depot Co., 194 Mo. 564.

BROWN, C.—This is a suit for damages on account of personal injuries which are alleged to have been received by plaintiff at the joint passenger station of defendant and the St. Louis Iron Mountain and Southern Railway Company at the city of Paragould, Arkansas. The petition states that while he was lawfully there, walking at the side of defendant's track, he was struck by the door of one of defendant's freight cars in a passing train; that the door had been negligently permitted by the defendant to project and swing a considerable distance outward from the side of the car so that it struck him and pulled him along with the moving car for several yards and violently threw him into and against a mass of iron and track rails negligently and wrongfully left by defendant where the public were accustomed to travel and to get off the cars at the station, thereby throwing him to the ground and under the moving train which ran over his right arm crushing and mangling it so that it had to be amputated at the shoulder. Judgment is asked for $15,000.

The answer was a general denial and a plea of contributory negligence. The following plat of the vicinity where the accident occurred will be of assistance in understanding the facts.

Thompson v. Railroad.

The station building, a little over 156 feet long and 30 feet wide, contains, in the order named from north to south, the waiting rooms of the railway companies, the ticket offices, and the colored waiting rooms, all of which occupy perhaps two-thirds of the length of the building; then a hall or passage about twelve feet wide running through the building from

east to west; next the baggage room; and at the south end the office of the Pacific Express Company, which is occupied by it under a lease from the owners of the station. On the east or defendant's side of the building, near the south end, is a double sliding door of the express office; opposite it on the Iron Mountain side is a similar door through one of the sliding parts of which a smaller door had been cut by the express company. The express company had four trucks for the handling of its traffic, and the railroad companies from four to six for baggage. These last were frequently stored in the passage when not in use. The entire space occupied by the railroad companies around the station building and south between the tracks of the two companies was paved with crushed stone. This was kept smooth and in good condition and constituted the only platform of the station. It was not only used for the purposes incident to the handling of the passenger and express business of the railways, but also for the passage of the general public backwards and forwards between Main street on the north and Garland avenue on the south, and even beyond Garland avenue. A well worn path extended along the west side of the defendant's tracks upon this pavement and entered Garland avenue on a wooden walk built across the ditch. Passenger trains running north over defendant's road usually stopped with the locomotive obstructing Main street, and the train extended about three hundred and fifty feet to the south. The passengers entered and alighted from the cars on that portion of the pavement between the avenue and the south end of the station.

There was no witness to the accident except the plaintiff himself, and Orville Thompson, a younger brother twenty-seven years of age. The two together left the Thompson store on the east side of Pruett street some distance north of Main, at sometime from

nine to half past nine o'clock in the evening, to go to their father's house, which was on the north side of Main street a little more than a block east of the depot. Going down Pruett street they stopped at Empfield's jewelry store some ten or fifteen minutes, then went on to a restaurant where they stopped a few minutes and ate some chili, then went on to Main street, where the plaintiff stopped and talked with Mr. Jackson while Orville went on to the northeast corner of the depot and waited for him. At this time a freight train of defendant, called in the evidence second fifteen, consisting of 41 loads with its engine and caboose, stood immediately north of Main street where it waited on a side track to permit the passage of a north bound passenger train (No. 2) which it met at that point. At this time the Thompsons were seen on Main street near the depot by Mr. Wright, a witness introduced by defendant apparently to prove that fact. Second fifteen pulled out for the south at 10:35, its movement hiding the Thompsons from Mr. Wright's view. Up to this time there is no dispute as to the facts, and it is also admitted that Orville Thompson then had a package of whiskey in the express office for delivery which he did not receive until the next day.

They say that Orville had told the plaintiff of this whiskey and that they started down to the express office on the east side of the station to get it, and that as they started the train had also started and was pulling along opposite them. When they got to the door of the express office they knocked and no one answering they started around the south end of the station to go to the door on the Iron Mountain side making a considerable detour to go around some trucks and a telephone pole at the southeast corner of the building. This brought them pretty close to the train and before they turned away from it again something hit the plaintiff on his head or back which proved to

be a loose and swinging door hanging by its upper left corner alone; that plaintiff became entangled in or attached to this door and was carried forward so that as the train increased its speed Orville, who was all the time trying to pull him loose from the door, was compelled to run to keep up with it. Finally they reached the point in Garland avenue shown on the map by crosses where two or three steel rails and some angle bars were lying, over which the plaintiff stumbled, coming loose from the car door, and fell so that his right arm extended across the rail and was run over and crushed by the wheels. The entire dispute as to facts is included within the time that elapsed after they left Main street to the consummation of the injury. Orville, after extricating plaintiff from beneath the train, went back to the east door of the express office, and knocked, and Mr. Barton, the agent of the express company, Mr. Martindale, its transfer clerk, Mr. Newberry, the town marshall, and Mr. Crowell were in. To use the words of Mr. Barton in his testimony, he "knocked like everything" and commenced calling, and Mr. Barton rushed to the door and opened it, and Orville said: "Come back here quick, Leander is hurt, the train has hit him." Mr. Martindale and Mr. Newberry ran out and brought plaintiff to the office and sent Crowell for the doctor. Mr. R. J. Tucker was standing in the back door of his restaurant, which fronts west on Pruett street opposite the northwest corner of the depot. Crowell, as he passed, told him that Leander was hurt. Tucker stepped across to the depot, and finding the west door closed, walked around the south end and came to the other door, which was also closed. Thinking they wanted nobody in there he came up to the north end of the depot and started to the restaurant, when he met the plaintiff's father coming from home. He told Mr. Thompson that plaintiff was in the express room. They went back and knocked, and Mr. Martindale

came to the door and opened it and they went in.  As Mr. Tucker came around the southeast corner of the depot he met Mr. Haley, conductor of second fifteen, running.  Mr. Haley called to him to take his way bills, which he had forgotten to leave when he took out his train.  Mr. Tucker took the bills and Mr. Haley ran back to the Iron Mountain crossing and signaled to pull ahead, and got on the caboose at that point.  When he found he had forgotten the bills, he had put on the air from the caboose, stopped the train, ran back to the depot, given his way bills to Tucker and got back to his train, without knowing that anything had happened.

Plaintiff was so badly injured that the doctors advised that his life was in extreme danger.  The bones of his arm were crushed and projecting through the flesh and skin.  He had a cut on his forehead and one on the back of his head, and numerous bruises on other portions of his body; having one long bruise on his back and hip, looking, as the doctor said, as if he had been "drug over some object or some object drug over him."

The conductor stated that when he came out of the depot with his lantern and signaled his train to go on, he stood on the west side of the track and inspected it as it went by; that it was his duty to inspect the train whenever he had an opportunity, and that he saw no car with a door hanging down by one hook.  He got on the caboose at the rear of train when it passed.  Defendant introduced much evidence tending to discredit the testimony of Orville Thompson, including a written statement purporting to have been made the following day, to which his name was admitted to have been signed.  The important details of this evidence were disputed.

At the close of the evidence the defendant asked the court to instruct the jury to find a verdict for the defendant which the court refused to do and there-

upon gave the following instructions for plaintiff of which the appellant complains:

"1. The court instructs you gentlemen, that if you believe and find from the testimony in this case, at the date of the alleged injury to the plaintiff, he was at the Union Station, in the city of Paragould, in the state of Arkansas, for the purpose of getting a package from the express office of said station, then he was rightfully there, and, if you further believe that while the plaintiff was passing along the platform of said station to said express office, if you believe that he did so pass along, the defendant, railway company, ran its freight train by said station with a car door swinging or projecting from the side of one of the cars of said train a sufficient distance to strike or injure persons who might be upon said platform, and that the plaintiff, without notice or warning of said swinging or projecting door, if you believe it existed, was struck thereby, at said time and place, upon the back of his head and body without fault upon his part, and forced or carried forward with the movement of said train to and upon a mass of angle bars, track rails or other railroad irons, and by reason thereof was thrown upon said railroad track and under said moving freight train and crushed, wounded and mangled so as to necessitate the amputation of his right arm, then the verdict will be for the plaintiff.

"3. You are further instructed that one is not required to anticipate unknown danger, or danger arising from the negligence of another; all that is required is that he exercise ordinary care under the circumstances, for his safety from known danger. Hence, if you believe from the testimony in this case that at the time of plaintiff's alleged injury he was walking along the platform of said station at a sufficient distance from the moving freight train of the defendant, to permit the cars thereof to pass him in safety, and if you further find and believe that the

occasion of his being struck and injured (if you find that he was struck and injured) was a swinging or projecting door on the side of one of the cars of said train, and that plaintiff had no notice or warning of the condition of said door, then you are instructed that he was not required to anticipate danger from said door and was not guilty of contributory negligence in walking where said door would strike him.''

The court refused the following instructions asked by defendant.

''5. The jury are instructed that notwithstanding they may find from the evidence in this case that the accident to the plaintiff resulted from a car door swinging open and striking him and throwing him under the wheels of the car, that alone will not entitle him to recover in this action. He must go further and prove that the defendant knew, or by the use of ordinary care should have known, that the door of the car was loose, and was likely to swing open while in motion from which such accidents as the plaintiff sustained might probably result.

''11. The court instructs the jury that to entitle the plaintiff to recover in this suit, it must appear from the evidence that the injury complained of was occasioned by the want of attention, carelessness or negligence on the part of the defendant, or its servants, as charged in the petition and was not simply the result of an accident, and if the jury believe from the evidence that the injury resulted from an accident which could not have been foreseen or guarded against by the exercise of ordinary and reasonable care and prudence on the part of the defendant then the plaintiff cannot recover and the jury should find for the defendant.''

The verdict was for the plaintiff for ten thousand dollars.

Error is assigned on the giving and refusal of the foregoing instructions, and also that the verdict

is excessive and the result of the passion and prejudice of the jury.

I.   The defendant complains, first of all, of the action of the court in refusing to direct a verdict in its favor.

It is charged as the foundation of the action that while the plaintiff was lawfully at a union station used by the defendant in the city of Paragould, Arkansas, in a place where the public were accustomed to travel, and get on and off the cars at said station, he was struck by the door of a freight car which the defendant had negligently and wrongfully permitted to project     and   swing   a   considerable   distance   outward   from   the   side   of   one   of   the   cars   of   a   passing   train,   and   was   thereby   thrown   down   so that his   right   arm   was   run   over   and   crushed   by   the wheels   of   the   train,   and   was   necessarily   amputated   at   the   shoulder.     Both   the   plaintiff   and a brother who was with him at the time, testified directly and positively to the facts.   They said that the plaintiff was struck by the door of an ordinary box car swinging out from the car, hanging only by the upper corner toward the rear of the train; that it carried him along a considerable distance, and then threw him down with the result in the petition described. The defendant says that this testimony is not only unreasonable, but is inconsistent with physical facts of which we must take notice.   In short it says that the story is an impossible one.   We have carefully examined all the evidence and cannot agree with this proposition.   It is true that the defendant introduced much testimony to prove physical facts inconsistent with this story, and also proved inconsistent statements in writing, to which one of the witnesses admitted that his name was signed with his own hand, but this evidence simply presents questions of veracity for the determination of the jury with which we have

nothing to do. For instance the conductor of the train, whose duty it was to do so, testified that he inspected the cars by standing at the side of the train as it passed, going toward the place of the accident about 300 .feet away, and that no car was in the condition described by the plaintiff and his brother. Another employee of the defendant testified that he inspected the same side of the train at the end of the run, and that the cars were in good condition. We can find nothing in the record that calls upon us to invade the province of the jury to determine how far these statements are irreconcilable with each other, or if they should prove, in our opinion, to be irreconcilable, to determine which is true and which is false. The injury is admitted. No other explanation is offered, and it rests with the jury to determine whether or not this one is true.

The defendant insists that according to plaintiff's own testimony he was, at the alleged time and place of the accident, a mere licensee on the premises of defendant, which, therefore, owed him no duty except not wilfully or wantonly to injure him; and there being no evidence that the injury was either wilful or wanton, a verdict for the defendant should have been directed. As no statute or other law of Arkansas is pleaded, we will, in the examination of this and other like questions, have to be guided by the laws of this State. [Flato v. Mulhall, 72 Mo. 522, 525; Johnston v. Gawtry, 83 Mo. 339; Tennent v. Ins. Co., 133 Mo. App. 345, 352.]

Railroad companies, like many other business enterprises that depend upon contact with the public for the transaction and development of their business, naturally seek locations that are easy of access by public highways to the centers of population and commercial activity. It is natural that in some instances they should desire to improve and enlarge these facilities for approach to their depots and warehouses

by devoting their own lands to such purposes, and it often occurs that in the attempt to obtain the greatest possible benefit from facilities of this character the general public are encouraged to make the freest use of them consistent with the interests of the owner. To what extent such use is to the advantage or detriment of the owner is a matter of opinion resting upon the peculiar circumstances of each case. In this case the evidence is clear and the fact undisputed that much of the pedestrian travel between the northern and southern portions of the city was over the smooth, clean pavement about the station, and between the tracks of the railroad companies that used it in the transaction of their business. There is no suggestion that either of the companies discouraged this travel, and nothing in the record to weaken the force of such reasons as may naturally suggest themselves for its encouragement.

In Commonwealth v. Power, 48 Mass. 603, it was held that "the opening of depots and platforms for the sale of tickets, for the assembling of persons going to take passage, or landing from the cars, amounts in law to a license to all persons, prima facie, to enter the depot, and that such entry is not a trespass; but that it is a license conditional, subject to reasonable and useful regulations." This language is quoted with approval by this court in Hicks v. Railroad, 64 Mo. 430, 437, and the doctrine stated in Gillis v. Railroad, 59 Pa. St. 129, disapproved. That case grew out of an unfortunate accident connected with the memorable western trip of President Johnson in 1866. He and the distinguished gentlemen who accompanied him were furnished a special train, with a special time-schedule for their accommodation, by which it was required to stop at Johnstown, Pennsylvania, long enough to enable the president to speak to the people of that vicinity, who were notified by the railroad company of the time of the arrival and departure of

the train. It was stopped at an unusual point, to give the people an opportunity to use a platform maintained by the company at the station to listen to the president, who spoke from the rear of the train. The platform fell under the weight of those who occupied it, and many were killed and injured. The court held that although the plaintiff might not have been technically a trespasser, because the platform was open, and there was a general license to pass over it, yet the company stood in no relation to him which required care on its part, and that it was accordingly liable only for wanton or intentional injury.

Were the court now called upon for the first time to make its choice we would not hesitate to adopt the doctrine quoted from the Massachusetts court, but it is no longer, with us, a question of first intention. Whatever may be the rights growing out of contract relations, such as that of passenger and carrier, it is well settled by a long line of judicial decisions in this state, that railroad companies and others similarly situated, must, so far as their relations to the general public are concerned, take notice of the conditions created by the use of their roadways or premises by others with their encouragement or permission either expressed or implied; and that they thereby assume the duty to use reasonable care to avoid injuring those who may take advantage of such permission.. [Hicks v. Railroad, supra; Doss v. Railroad, 59 Mo. 27; Langan v. Railroad, 72 Mo. 392; Ahnefeld v. Railroad, 212 Mo. 280; Crawford v. Stock Yards, 215 Mo. 394; Murphy v. Railroad, 228 Mo. 56.] And that alone is reasonable care which is proportionate to the probability of injury growing out of the situation.

If one had a delightful grove and should place a sign over the gate inviting the public to come in and walk in its shade, he would be negligent if, without warning, he should, by blasting on the premises, make it dangerous to pedestrians who might take advantage

of his invitation, and his liability in such a case would
extend to one who had come in to lie upon the grass,
as well as to those who were *walking,* according to the
strict terms of his invitation. This is illustrated by
the decision of this court in the case last cited. It was
a suit for damages on account of the killing of one
Fletcher, at a place where defendant's track had been
"used for a long time, with its tacit acquiescence, by
the inhabitants of Kirksville going from the southwest
and south parts of the town to the northeast, where the
principal business section lay, and *vice versa.* Espe-
cially was this so mornings, noons, and evenings. This
custom had gone on for many years and no attempt
was made to show that defendant took any steps to pre-
vent such open, continuous and extensive use by the
public" (p. 76). Mr. Fletcher, who was a railroad
section foreman by occupation, living and working in
another city, was visiting Kirksville, in which he had
formerly resided. He took advantage of his leisure to
become intoxicated, and went out and lay down to rest
himself on the track at this very place, where he was
struck by one of defendant's trains. The court held
that Mr. Fletcher was entitled to such protection as
the performance by the company of its duty to the gen-
eral public would afford; and that a failure to perform
that duty was such negligence as enabled any person
injured by it to recover compensation for such injury.
There is nothing in Carr v. Railroad, 195 Mo. 214,
which conflicts with the doctrine of this case. In that
case it was conceded that it would be no defense to the
action that plaintiff, at the time of the injury, was
walking along the roadbed of defendant. He was, said
the court, a licensee, and was entitled to protection
from negligence, and there was no evidence whatever
to show any negligence on the part of the defendant
contributing to the injury. We have also carefully
examined the other Missouri cases cited by the defend-
ant, and find nothing in them inconsistent with the

doctrine of this court as held in the Hicks and Murphy cases already cited, and expressed in this opinion. That the running of a car with a loose door swinging out over the platform used by the public in the manner indicated in the evidence would be an act from which the jury would be at liberty to infer negligence under the circumstances of the present case is evident. [Hicks v. Railroad, supra; Crawford v. Stock Yards, supra; Langan v. Railroad, supra.] We hold therefore that there was no error in submitting the case to the jury.

II. The court, at the instance of the plaintiff, and against the defendant's objection, instructed the jury, in substance, that if they believed from the evidence that the defendant ran its train by the station with the car door swinging from the side of one of the cars far enough to strike or injure persons on the platform and the plaintiff while there for the purpose of transacting business with the express company, was struck thereby, and injured as stated in the petition, their verdict should be for the plaintiff; and refused to instruct for the defendant, that if the injury resulted from an accident which could not have been foreseen or guarded against by the exercise of ordinary and reasonable care and prudence they should find for the defendant.

This action of the court amounts to an assertion that the swinging door, if it existed as described in the evidence, was, of itself, in its relation to the plaintiff, either conclusive evidence of the negligence of defendant in permitting it, or prima facie evidence of such negligence; and that there was no evidence tending to rebut it.

There was nothing in the relation of the plaintiff to the defendant as set forth in plaintiff's instruction which indicated a duty on the part of the defendant to insure him against injury in the manner detailed in the evidence. The real question is whether the

243 Sup.—23

maxim *res ipsa loquitur* applies to the facts detailed in the instruction so that they would raise a prima facie presumption of negligence. This maxim is founded upon the feeling that every apparent wrong resulting in injury to another which may only be palliated or explained by facts within the peculiar knowledge of the perpetrator, carries with it the proof of its wrongful character and places upon him the burden of offering a just excuse. [Morgan v. Cox, 22 Mo. 373; Tateman v. Railroad, 96 Mo. App. 448; Rattan v. Electric Co., 120 Mo. App. 270, 279; Blanton v. Dold, 109 Mo. 65, 74; Sharp v. Railroad, 114 Mo. 94; Gannon v. Gas Light Co., 145 Mo. 502.] In this case the testimony tended to show that the defendant ran its train along the side of a platform which was rightfully used by the public, not only for the transaction of business connected with it and its tenants, but also for the general purpose of traveling from place to place, with a loose door hanging by a single corner near the top of the car and projecting and swinging outward over the platform so far as to be dangerous to persons walking thereon, and that the plaintiff walking on the platform where it would otherwise have been safe was injured by being struck by the door. We think that this was not only evidence of negligence (Hicks v. Railroad, supra), but that it made a prima facie case calling for explanation on the part of the defendant. To meet this burden the defendant introduced the conductor of the train who testified that while his train was standing in the yard north of Main street, before the accident, he walked along its west side from the rear to the front of the engine and examined the cars as to their fastenings; that afterward, when the train pulled out, he stood upon the same side, which was the one where the accident occurred, and examined the doors as they successively passed him; that the train was composed entirely of loaded cars which it was his duty to inspect whenever an opportunity offered, to see that

the doors were properly closed and sealed; and that in both these inspections he found them in apparent good order. We think that this testimony tended not only to disprove the evidence of plaintiff that a door was swinging outward by a single corner when the car had arrived at a point a hundred and fifty feet beyond the position of the conductor during the second inspection, but it also tended to prove the exercise of reasonable care in the inspection of the cars to prevent such situations as plaintiff claims resulted in the accident. This being so that question should have been submitted to the jury, and it was error to give the first instruction for the plaintiff, which predicated the right to recover upon proof of the defective condition of the door and the resulting injury only; and that the jury should have been instructed as requested by defendant that if the accident could not have been guarded against by the exercise of ordinary and reasonable care and prudence on the part of defendant they should find for the defendant.

For these errors the judgment of the circuit court will be reversed and the cause remanded for a new trial in accordance with the principles stated in this opinion. *Bond, C.,* concurs.

PER CURIAM. — The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur except *Valliant, J.,* absent.