CHAINEY ALLEN, RESPONDENT, v. LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE, APPELLANT.—41 S. W. (2d) 952.

St. Louis Court of Appeals.  Opinion filed September 8, 1931.

*P. M. Estes* and *Moreau P. Estes* for appellant.

*James J. Donohoe* for respondent.

NIPPER, J.—This is an action brought by Chainey Allen against Life & Casualty Insurance Company of Tennessee, to recover upon a contract of accident insurance issued by defendant on the life of Tom Allen.

The case was tried by the court without the aid of a jury. Plaintiff recovered, and defendant has appealed.

The petition alleges that on and prior to February 28, 1929, Tom Allen, the insured, was in the employ of the Terminal Railroad Association as iceman, and whilst lawfully standing or walking on a public platform at Union Station, St. Louis, Missouri, he was struck, knocked down, and run over by a railroad train, propelled by either steam, electricity, gasoline, compressed air, or liquid power; that said platform was then, and had been for many years prior thereto, used for baggage, mail, express, icing trains, and by passengers, and for other public uses; that at the time Tom Allen, the insured, sustained his injury, he was not on a railroad right of way in violation of any statute or of any regulation of any railroad company or otherwise; that insured sustained his injuries February 28, 1929, and died therefrom on the same day; that, at the time of his death, the policy was in full force and effect; and that defendant became liable to plaintiff for the sum of two thousand dollars, for which amount plaintiff asked judgment.

The answer, among other things, alleges that the policy mentioned in plaintiff's petition was a limited travel and pedestrian policy, and covered only any injury or death that the insured may sustain or suffer if he be struck, or knocked down, or run over, while walking or standing on a public highway by a vehicle operated by steam, cable, electric, naphtha, gasoline, horsepower, compressed air, or liquid power, excluding injuries sustained while on a railroad right of way in violation of any statute or regulation of any railroad company.

The answer also alleges that the insured was not killed or injured while walking or standing on a public highway, as provided in said policy, or in any manner therein provided for and set forth in said policy, and therefore defendant is not liable under the provisions and terms of said policy.

The evidence discloses that deceased was working at Union Station as an iceman; that he had gone to work about four o'clock in the afternoon, and was killed about one hour later. The evidence is rather meager as to just how this accident occurred, or what deceased was doing just prior to the time he was killed. The evidence does show conclusively that deceased was struck by what is called

a dead train as it started to move out of Union Station, and was run over and killed.

One witness testified that he saw deceased standing on the platform by the side of this train in a rather stooped position, and that just as he saw him he was caught between the cars, or hit by the train, and jerked beneath it. He said at the time he saw the deceased's ice truck standing a few feet away from him.

The evidence discloses that it was Allen's duty as an iceman to ice outgoing trains.

There was evidence offered on the part of the defendant to the effect that he was seen lying in a mail coach on this dead train a few moments prior to the accident, apparently asleep. And the contention is made by defendant that he was thereby violating certain rules of the railroad company, and was not in the discharge of his duties as an iceman at the time he was hurt. The evidence is rather meager on this phase of the case, and the inference is attempted to be drawn by defendant that when the train started to move, he attempted to get off of the car, and in so doing was thrown beneath the train. The train had only moved a very short distance—in fact less than forty feet—when it struck Allen and killed him.

The evidence discloses that the platforms and railroad tracks at Union Station are enclosed by iron fences, and that while these platforms are used by the public and by passengers in going to and from trains, the gates are kept closed, or a watchman stationed at each gate so as to direct and control the entrance of persons intending to become passengers and those leaving trains. The public is permitted on these platforms only by permission of the employees tending the gates. The platforms are also used by the employees of the railroad in the performance of their duties. If deceased was in the performance of his duties as an iceman, he would naturally have to use these platforms for his ice truck, although the evidence offered on the part of defendant shows that at the particular time he was killed he had no duty to perform upon this particular platform.

The provisions of the policy in dispute are as follows:

"If the insured be struck or knocked down or run over while walking or standing on a public highway by a vehicle propelled by steam, cable, electricity, naphtha, gasoline, horse, compressed air, or liquid power, excluding injuries sustained while on a railroad right of way in violation of any statute or of any regulation of the railroad company."

The contention of the appellant here is that the platform upon which Allen was standing at the time he was struck was not a public highway within the meaning of the policy, but that the evidence shows Allen was killed, or sustained his injuries, while on a railroad right of way in violation of a regulation of the railroad company.

In support of its contention, that a railroad station platform is not a public highway within the meaning of this policy, we are cited to such cases as Hicks v. Railroad, 64 Mo. 430, wherein our Supreme Court cites the case of Giles v. Railroad, 59 Pa. 129, approvingly, and holds that the platform of a railroad company at a station is in no sense a public highway.

Counsel for respondent cites cases from other jurisdictions, to the effect that a railroad platform under certain circumstances becomes a public highway.

We are of the opinion that the correct solution of this case, and a correct interpretation of the policy in dispute, does not require a decision upon this question, except in so far as it affects the policy here in issue. It will be noted that the policy excludes injuries sustained while on a railroad right of way, but it does not stop with that statement, but contains the additional words, "in violation of any statute, or of any regulation of the railroad company." These words evidently have some meaning, and it does not appear to be the intention to exclude injuries merely because they are sustained on a railroad right of way, but the insured must be there in violation of some statute, or some regulation of the railroad company.

Now, as heretofore stated, the evidence is not clear as to what Allen was doing at the time he received his injuries. The evidence does show that he was an iceman for the railroad company. The evidence also shows that he had only been working one hour when he was killed. The evidence shows that if he was in the performance of his duties as an iceman, he would necessarily have to use these platforms. There is evidence that his ice truck was standing a few feet away from him, and even though he was not at that particular moment icing some train, we think the evidence is sufficient to show, and from which the court could find, that he was there in the discharge of his duties. If he was not icing any particular train at that time, he could yet be in the discharge of his duties. There is no rule or regulation of the railroad company as shown by this record requiring an iceman to leave the station or go somewhere and hide until he was ready to ice the next train.

The trial court held, and we think correctly so, that the language of this policy did not intend to exclude injuries received on a railroad right of way unless the injured party was on the right of way in violation of some statute or regulation of the railroad company. This is certainly not a strained construction. It is the plain language of the policy. And if the defendant intended to exclude liability on its part for a death caused under the circumstances which the evidence shows in this case, it could easily have said so, and should have said so. We think that under the facts of this case the trial court sitting as a jury had a right to make the finding

it did, and enter the judgment entered in this case. It is for the right party, and ought not to be disturbed.

The judgment is accordingly affirmed. *Haid, P. J.,* and *Becker, J.,* concur. ·