Coudy v. The St. L., I. M. & S. Ry. Co.

COUDY v. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant.*

1. **Negligence :** PLEADING. A petition in an action by a passenger against a railroad for injuries resulting from its negligent management of its train is sufficiently specific in its averments of the acts constituting the negligence, which charges that "the defendant, by and through its servants, agents and employes in charge of and managing said train, negligently and unskilfully ran and managed the same in such a way as to cause the said train and the car in which the said plaintiff was being conveyed as to check its speed very suddenly and to jolt and pitch the same suddenly and with great force backward and forward in such manner and with such force as to cast and throw said plaintiff out of said car and upon the platform and from said platform onto the track of said railroad, under the said cars and train, by means and by reason of which said cars and train ran upon and over the left arm and left leg of the plaintiff."

2. **Demurrer to Evidence :** NEGLIGENCE. The trial court in this case did not err in overruling a demurrer to plaintiff's evidence interposed by defendant on the grounds that the evidence showed that plaintiff was guilty of contributory negligence, and that such evidence as to the manner in which the accident occurred was irreconcilable with the physical facts attending it.

3. **Jury, Province of.** It is for the jury and not for the court to pass on the credibility of witnesses ; to determine the weight to be given to their testimony and to reconcile conflict therein.

4. **Carrier :** PASSENGER, INJURY TO : BURDEN OF PROOF. Where in an action by a passenger against a railroad for an injury received in operating its train, the occurrence of the injury through the mistake of the carrier is shown, a presumption of negligence arises against the latter, which casts upon it the burden of showing that the accident happened, notwithstanding the exercise on its part of the high degree of care which the law imposes on it.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Bennett Pike* for appellant.

(1) The court erred in permitting, against the objection of defendant, the introduction of any evidence under the allegations of the petition, as it only contains a general charge of negligence, and under the rule adopted by our Supreme Court and the court of appeals, is fatally defective. *Waldhier v. The Han. & St. Joe R. R. Co.*, 71 Mo. 514; *Leduke v. St. Louis & Iron Mountain R. R. Co.*, 4 Mo. App. 485. (2) The plaintiff, upon his own testimony, ought not to recover, and the demurrer to the evidence, at the close of the plaintiff's case, should have been given. Wharton on Negligence, 363; *Adams v. R. R.*, 4 C. P. 739; *Geddes v. R. R.*, 103 Mass. 391. (3) The testimony of plaintiff, which was all the evidence in his behalf as to how the injury occurred, is absolutely irreconcilable with the physical facts surrounding the injury, and for this reason the court should have refused to submit the case to the jury. *Powell v. R. R.*, 76 Mo. 80; 21 Fed. Rep. 892.

*Johnson, Lodge & Johnson* for respondent.

Norton, J.—This suit was instituted in the circuit court of the city of St. Louis by plaintiff to recover damages for personal injuries received by him while a passenger on one of defendant's trains, alleged to have been occasioned by the negligence of defendant in the management of its train. The answer was a specific denial of the facts alleged in the petition, and also set up contributory negligence on the part of plaintiff. On the trial plaintiff obtained judgment for $6,000 damages, from which defendant appealed to the St. Louis court of appeals where the judgment was affirmed, from which defendant has appealed to this court.

The first point made in the brief of counsel is that the court erred in overruling defendant's objection to the introduction of any evidence under the petition, which

objection was based on the ground that the petition only contained a general charge of negligence. This point is not well taken. The petition after setting out that plaintiff was a passenger on defendant's train, contains the following averments as to negligence, viz. : that "the defendant, by and through its servants, agents, and employes in charge of and managing said train, negligently and unskilfully ran and managed the same in such a way as to cause the said train, and the car in which the said plaintiff was being conveyed as aforesaid, to check its speed very suddenly, and to jolt and pitch the same suddenly, and with great force backward and forward, in such a manner and with such force as to cast and throw said plaintiff out of said car and upon the platform thereof, and from the said platform onto the track of said railroad under the said cars and train, by means and by reason of which the wheels of the said cars and train ran upon and over the left arm and left leg of the said plaintiff," etc. These averments sufficiently notified defendant of what it had to defend against, and could not well be made more specific.

The next error assigned is the action of the trial court in overruling defendant's demurrer to the evidence at the close of plaintiff's case. The plaintiff, who was a boy fourteen or fifteen years of age at the time of the accident, testified as follows : " I was hurt August 25, 1880 ; was at that time living near Elwood station, Carondelet, and working on Third street and Chouteau avenue. I came up on the Iron Mountain road that morning ; left home about six o'clock ; my brother John came with me. I bought a ticket at Elwood station, and gave it to the conductor on the car that morning. I took a seat in the car the fourth from the last one in the train. I had three bundles right on the seat opposite me ; one of them fell in the aisle, and as I raised to pick it up, there was a sudden jar, unusual, which threw me out. The seat I and my brother occupied runs parallel with the side of the car ;

the other seat to the right was cross-wise. The door opened on the opposite side east of me; the door was open at the time; the weather was warm. As I rose to get my bundle the jar threw me out against the railing and broke my teeth, and threw me backward off the car. I struck my head and it knocked me senseless. The train ran over my left leg and arm. At that time the train was a little north of Miller street; I noticed at the time we were just at Miller street. I was senseless when the wheels ran over me; I did not recollect for three or four days what had been done to me. The train checked right up running swift, did not leave much speed on at all; up to that time they seemed to be running very swift, I cannot say how fast. When I first came to consciousness I was in the city hospital; do not know what day that was; my left arm and leg were then off. I remained at the hospital for two months and was confined to the house for three or four months afterwards."

On cross-examination, the witness said: "Before the bundle fell off the seat I had ridden from Elwood station to Miller street; the jarring of the car caused the bundle to fall off the seat; when it fell off I stooped down to pick it up. The bundle fell off the end of the seat; it contained my blouse. The door opened to the east side of the car opposite me; it was opened straight with the aisle of the car; I did not look to see whether anything held it fast; I do not think the door moved; when the jar came it did not close. The iron railing was on the end of the car. When I was thrown out of the car I did not go exactly straight, I suppose I must have went from one side to the other. I struck the upper part of the railing. I was in the habit of getting off the train after it stopped at the gas house, where they changed engines, foot of Poplar street. I struck the railing on the car and was thrown backward, and fell on the ground and struck on a piece of iron, I think. I did not talk to Dr. Dean at the hospital and tell him how the accident happened; I never saw Dr.

Dean at the hospital that I know of. I fell backward off the step on the west side of the car. I did not see any colored porter on the train."

The evidence of this witness was corroborated by that of his brother, John Coudy, as to the position occupied by plaintiff in the car, and as to the fact that one of his bundles had fallen off the seat on the floor of the car, and the fact that plaintiff, while stooping to pick it up, was, by a sudden jerk of the car, thrown through the open doorway onto the platform. While this witness stated he did not see his brother fall off the platform, he also stated that at that time his attention was attracted by people running on the street, and that when the train stopped five blocks north of Miller street he got off and went back and found plaintiff with his arm and leg crushed. This witness also stated that on the switch rail that leads into the track that the train was on, there was a mark of blood where plaintiff struck his head; and this was about a foot and a half from the main rail that the train was on. His evidence as to the train being suddenly checked is corroborated by that of one Houett, who testified that he saw the train coming up at a pretty good speed and watched it go across Miller street, and just as it crossed, the steam was shut off and the air brakes put on and the wheels stopped turning and slid along. His evidence as to his teeth being broken and his falling on the back of his head was corroborated by that of Mrs. Coning, who stated that on the day of the accident she found the back of his head injured, his lip cut and teeth broken.

It is insisted by counsel that his demurrer to this evidence ought to have been sustained, first, because it showed that plaintff was guilty of contributory negligence, and, second, because the evidence as to the way the injury occurred was irreconcilable with the physical facts attending it. We are not willing to lay it down as a rule of law that the plaintiff, a boy of fourteen or fifteen years of age, who left his seat in the car to pick up a

package belonging to him, which had fallen from the place where it had been deposited onto the floor of the car, was guilty of contributory negligence in so doing. Such action on his part was the result of a natural impulse to take care of his own, and contributory negligence can no more be imputed to him on that account, than if he had left his seat to procure a drink of water. While it may be customary to forbid passengers from standing on the platform of cars, no precautionary rule was shown to exist forbidding them from standing up in the cars while in motion. An ingenious and plausible argument has been made by counsel to show that the physical facts surrounding the accident are irreconcilable with plaintiff's account as to how it occurred. In view of the fact that plaintiff's account of it is positive and direct, and the fact that it is corroborated in its most important particulars by two or three witnesses, and the fact (which the demurrer to the evidence admits) that the checking of the train was so sudden as to throw plaintiff through the open door, onto the platform, and against the railing, with such force as to break his teeth and cause him to fall backward off the platform, and down the steps, we are not prepared to say that the physical facts to which we have been referred by counsel, so overcome the facts testified to as to render them untrue and impossible. Even conceding, as is contended, that as a physical fact, if plaintiff fell from the platform as he swears he did, he would have fallen beyond the reach of the rails on which the cars were running and from which he fell, it would not necessarily follow from this that plaintiff, stunned as he was by the fall, could not and did not in his struggles, come with his left leg and arm within reach of the rails on which the cars were running. Such a result was not only possible, but might well take place. The argument addressed to us on this branch of the case, might well have been addressed, as it doubtless was, to the jury whose province it was to pass upon such a question. The duty of passing upon questions of fact belongs

to juries and that of passing upon questions of law to the courts, and the courts have no more right to invade the province of juries as to matters of fact than juries have to invade the province of courts as to matters of law.

It is further insisted that the court erred in refusing to instruct the jury after all the evidence was in that plaintiff could not recover. The evidence put in by defendant tended to show that plaintiff, instead of being injured by his being thrown from the car as detailed by him, was injured by his own recklessness in attempting to get off the cars, and was contradictory in other respects to that of plaintiff. It was for the jury and not the court to pass on the credibility of the witnesses, and to reconcile, if they could, any conflict, and determine what weight was to be given to the evidence of the respective witnesses, and for this reason under repeated rulings of this court the instruction was properly refused.

The court gave an instruction predicating the right of plaintiff to recover on the facts stated in the petition, and told the jury that if they believed from the evidence that those facts were true they would find for plaintiff, unless they further found that the checking of the train was the result of some unforeseen or unavoidable accident beyond the control of defendant's agents, and that the burden of proof was on the defendant to show such fact. It is claimed that this instruction is erroneous in that it devolves on defendant the burden of excusing the sudden checking of the train. The instruction, we think, is sustained by the authorities which hold that when an injury is shown to have been occasioned by an error of the carrier or his servants in operating the instrumentalities employed in the business of carrying, a presumption of negligence arises against the carrier, which casts on him the burden of showing that the accident happened notwithstanding the exercise on his part of the high degree of care which the law imposes upon him. *Skinner v. Railroad*, 5 Exch. 786; *Stokes v. Saltonstall*, 13 Peters 181; *Railroad Co. v. Pollard*, 22 Wall. 341;

*Farrish v. Reigle*, 11 Gratt. 697; *Holbrock v. R. R. Co.*, 12 N. Y. 236; *Stockton v. Frey*, 4 Gill 406; *Fairchild v. Stage Co.*, 13 Cal. 599; *Meier v. Railroad*, 64 Pa. St. 225, 230; *Dougherty v. Mo. Pac. Ry. Co.*, 9 Mo. App. 478, which was affirmed by this court. In the case of *Scott v. Dock Co.*, 11 Jur. N. S. 1108, the rule is laid down thus: "Where the thing is shown to be in the management of defendant or his servants and the accident is such as, under an ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence in the absence of explanation by defendant, that the accident arose from want of proper care."

The question as to whether plaintiff was or was not guilty of contributory negligence, was fairly submitted to the jury in the instructions given, and while the evidence relating to it was contradictory and conflicting, it was the province of the jury before whom the witnesses appeared, to judge of their credibility, and for that reason we do not feel at liberty to interfere with their finding, although it might seem to us to be against the weight of the evidence. Judgment affirmed, in which all concur.