MAY HARTNETT, RESPONDENT, v. MAY DEPARTMENT STORES COMPANY, A CORPORATION, APPELLANT.—85 S. W. (2d) 644.

St. Louis Court of Appeals. Opinion filed July 16, 1935.

Appellant's Motion to Modify Opinion and for Rehearing Overruled September 10, 1935.

Opinion Modified by the Court of Its Own Motion September 10, 1935.

*Everett Hullverson* and *Robert L. Aronson* for respondent.

*Joseph N. Hassett* and *Ernest E. Baker* for appellant.

SUTTON, C.—This is an action for personal injuries sustained by plaintiff while riding as a passenger on an escalator in defendant's store, resulting from a violent and unusual jerk, jar, or jolt of the escalator.

The trial, with a jury, resulted in a verdict and judgment for plaintiff for $2800, and defendant appeals.

Plaintiff testified as follows:

"On December 24, 1929, I was Christmas shopping in the basement of the store. I purchased a few pairs of gloves in the basement and then went to the escalator to go from the basement to the first floor. When I boarded the escalator I put both hands on the rails. When I got about two feet up the escalator, there was an unusual jerk—really would not call it a stop. It was a terrible jerk. I had gone about two feet and there was a terrible jerk that threw this woman that was in front of me on top of me, and threw my left leg backward and knocked me off my balance and my left knee struck

the escalator. I was bearing most of my weight on my right leg as I was standing on the escalator, and that threw my left leg out of balance, and then when the escalator started going again, it started to run with an unusual jerk, something I never witnessed before on an escalator in all the times I have ridden on one. The lady in front of me fell back against my chest. I fell on my left knee. It threw my left leg off balance and knocked my knee from under me. I had no control of my knee, the escalator started with such an unusual jerk. My left leg was backward and my right leg forward. I did not start walking up the escalator when I boarded it, but stood still. I did not move my feet after I boarded the escalator until I was thrown. The escalator had moved only a short distance above the basement floor when I was thrown. The first thing that happened when I was on the escalator I cannot really say. It gave an awful jerk. I would not say it stopped, but it was something very unusual. All I know is that the escalator gave a terrible jerk and started out with another jerk."

Defendant adduced testimony to the effect that the escalator was regularly inspected, and that no mechanical defect in the escalator was reported on the day of plaintiff's injury. Also that the electric power by which the escalator was operated was supplied by the Union Electric Light and Power Company, and that said power company could stop or interrupt the electric current, thereby causing the escalator to stop.

At the instance of the plaintiff the court gave to the jury, among others, an instruction substantially as follows:

"The court instructs the jury that if you find and believe from the evidence that plaintiff was a passenger upon the escalator mentioned in evidence, and that while plaintiff was upon said escalator, the same stopped and violently jerked, jarred and jolted, and plaintiff was violently jerked, jarred, jolted and thrown, and that the action of the escalator, under the circumstances, was unusual and extraordinary, and that plaintiff was injured thereby, then you may infer that it was occasioned by some negligence of defendant, and the burden of bringing forward evidence is upon the defendant to rebut this inference of negligence and establish the fact that there was no negligence on its part, and that the injuries resulted from some cause which the highest degree of care would not have avoided."

At the instance of the defendant the court gave to the jury, among others, an instruction substantially as follows:

"The court instructs you that the burden is upon the plaintiff to establish by the greater weight of the evidence, that she was injured, and also that whatever injuries she sustained resulted from her being jerked, jarred, jolted, and thrown by the escalator com-

ing to a sudden stop and violently jerking, jarring and jolting, and unless the plaintiff has so proven, you will return a verdict for the defendant.''

Defendant complains of the plaintiff's instruction on the ground that it places upon the defendant the burden of showing that the unusual jerk, jar, or jolt of the escalator did not result from any negligence on its part.

Instructions similar to this, but much more favorable to the plaintiff, respecting the presumption arising and the burden imposed under the *res ipsa loquitur* rule, have received the approval of our Supreme Court for a half century or more.

In Lemon v. Chanslor, 68 Mo. 340, where plaintiff was injured by the breaking down of defendants' hack in which plaintiff was riding as a passenger, instructions telling the jury that the burden was on the defendant to prove to the satisfaction of the jury that the hack was safe, sound, and roadworthy, and carefully driven, and that the accident arose from and was caused by an inevitable accident, or a defect that could not have been seen, detected, or known to defendants by the exercise of the utmost skill, knowledge, foresight, care, inspection and examination of the hack, were approved. In approving the instructions the court quoted with approval from Stokes v. Saltonstall, 13 Peters 181, as follows:

''When damage or injury happens to the passenger by the breaking down or overturning of the coach, the presumption, *prima facie,* is that it occurred by the negligence of the coachman, and the *onus probandi* is on the proprietors of the coach to establish that there has been no negligence whatever, and that the damage or injury has been occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent. For the law will, in tenderness to human life and limbs, hold the proprietors liable for the slightest negligence, and will compel them, by satisfactory proofs, to repel every imputation thereof.''

In Coudy v. St. Louis, Iron Mountain & Southern Railway Co., 85 Mo. 79, it was alleged that plaintiff was injured while a passenger on defendant's train, by an unusual jerk or jolt of the train caused by the sudden checking of the train. The court approved an instruction telling the jury that if they found the facts as alleged they would find for plaintiff, unless they further found that the checking of the train was the result of some unforeseen or unavoidable accident beyond defendant's control, and that the burden of proof was on defendant to show such fact. The court in approving the instruction said:

''The instruction, we think, is sustained by the authorities which hold that when an injury is shown to have been occasioned by an error of the carrier or his servants in operating the instrumentalities

employed in the business of carrying, a presumption of negligence arises against the carrier, which casts on him the burden of showing that the accident happened notwithstanding the exercise on his part of the high degree of care which the law imposes upon him.''

And the court in that case cited with approval Dougherty v. Missouri Pacific Railroad Co., 9 Mo. App. 478, wherein this court, speaking through Judge THOMPSON, said:

''When an injury is shown to have been produced, either (1) by the breaking down or failure of the carrier's vehicle, roadway, or other physical appliances . . ., or (2) by an error of the carrier, or his servants, in operating them . . ., without more, a presumption of negligence arises against the carrier, which casts upon him the burden of showing that the accident happened notwithstanding the exercise on his part of the high degree of care which the law imposes upon him.''

In Hipsley v. Kansas City, St. Joseph & Council Bluffs Railroad Co., 88 Mo. 348, the court approving the rule announced in Lemon v. Chanslor, *supra,* said:

''This rule was applied in a case where horse power and a hack were used by the carrier. for carrying passengers, and it applies with equal if not greater force when the more powerful instrumentality of steam is used as the motive power. While carriers are not insurers of the absolute safety of passengers and are not responsible for inevitable and unavoidable accidents, regard for the safety of human limb and life has led to the adoption of the rule announced. It follows from this ruling that plaintiff having offered evidence tending to prove that he was a passenger on defendant's train, and that he was injured without any fault on his part, by the derailment of the train, made out a *prima facie* case entitling him to a verdict, unless it was rebutted and overthrown by the evidence of defendant showing that the accident was not the result of that want of care and vigilance, which the law made it obligatory on defendant to bestow.''

In Price v. Metropolitan Street Railway Co., 220 Mo. 435, 119 S. W. 932, in which a collision between two of defendant's trains was involved, the court en banc approved an instruction telling the jury that ''the presumption is that the collision was occasioned by some negligence of the defendant, and the burden of proof is cast upon defendant to rebut this presumption of negligence and establish the fact that there was no negligence on its part, and that the injury, if any, was occasioned by inevitable accident or by some cause which the highest degree of care could not have avoided.'' In approving the instruction the court said:

''That the burden is upon the defendant to rebut the presumption and to show that it has not been guilty of negligence in a case of this character, is unquestioned law.''

The same instruction was approved by the court en banc in Loftus v. Metropolitan Street Railway Co., 220 Mo. 470, 119 S. W. 942.

In State ex rel. St. Louis & San Francisco Railway Co. v. Daues (Mo.), 290 S. W. 425, an instruction telling the jury that if the train on which plaintiff was riding as a passenger was wrecked by falling through a bridge, the law presumes that the wreck was caused by some act of negligence on the part of the defendant, and that before the jury can deny plaintiff a recovery the burden of proof is on the defendant to rebut this presumption of negligence and to establish to the satisfaction of the jury that the wreck was not caused by its negligence, received the approval of the court en banc. In approving the instruction the court adopted the language used by Judge RAGLAND in approving a similar instruction in Bond v. St. Louis-San Francisco Railway Co. (Mo.), 288 S. W. 777, as follows:

"It appeals therefore that in this State the rule is firmly established that where a passenger without fault of his own suffers injury by the derailment or wrecking of the vehicle or carriage, the burden is upon the carrier 'to establish that there has been no negligence upon its part and that the injury was occasioned by an inevitable accident or by some cause which human precaution and foresight could not have averted.' Logically such a rule cannot be merely one of procedure; it must be regarded rather as one of substantive law, adopted for the protection of passengers. It has been followed so long that its enforcement must now be considered a part fo the public policy of the State."

In Craig v. United Railways Company of St. Louis (Mo.), 185 S. W. 205, the court, in a divisional opinion by Commissioner Roy, said:

"The plaintiff alleged that the car in which she was riding split the switch, and the defendant put its motorman and conductor on the stand and proved such facts by them. On the other hand, the defendant, having helped to prove such derailment, made no effort to explain it or to weaken its effect. There was nothing then on that point to submit to a jury. They could very well have been instructed to find that such splitting of the switch was caused by defendant's negligence. The law, under such circumstances, presumes it was negligence and not accident." [See, also, Hurck v. Missouri Pacific R. Co., 252 Mo. 39, 158 S. W. 581; Mayne v. Kansas City Rys. Co. (Mo.), 229 S. W. 386; Thompson v. St. Louis Southwestern R. Co., 243 Mo. 336, 148 S. W. 484; Stauffer v. Metropolitan Street Ry. Co., 243 Mo. 305, 147 S. W. 1032; Redmon v. Metropolitan Street Ry. Co., 185 Mo. 1, 84 S. W. 26; Roberts v. Schaper Stores Co. (Mo.), 3 S. W. (2d) 241; Fowlkes v. Fleming (Mo.), 17 S. W. (2d) 511; Briscoe v. Metropolitan Street Ry. Co., 222

Mo. 104, 120 S. W. 1162; Orcutt v. Century Bldg. Co., 214 Mo. 35, 112 S. W. 532; Porter v. St. Joseph Railway, Light, Heat & Power Co. (Mo.), 277 S. W. 913; Olsen v. Citizens' Railway Co., 152 Mo. 426, 54 S. W. 470; Simpson v. Chicago, R. I. & P. Ry. Co. (Mo.), 192 S. W. 739; Och v. Missouri, Kansas & Texas R. Co., 130 Mo. 27, 31 S. W. 962.]

In Furnish v. Missouri Pacific Railroad Co., 102 Mo. 438, 13 S. W. 1044, plaintiff was injured by the derailment and fall down an embankment of a railroad car in which she was riding as a passenger. An instruction was given telling the jury that if plaintiff was injured by the derailment of defendant's railroad car and its fall down the embankment then it rests on the defendant to prove to the satisfaction of the jury that the accident was caused by inevitable accident or could not have been avoided by the exercise of the utmost human skill, diligence and foresight. In disposing of this instruction the court said:

"In that state of the case, if the jury found that plaintiff had been injured by the derailment of the car and its fall down the embankment, it then devolved on the defendant to explain how these things occurred without breach of its duty to plaintiff as a carrier.

"This is what the court said in effect, and it committed no error in so doing."

The court then said, in passing, that the instruction was not entirely in accord with technical nicety, in telling the jury that the burden of proof shifts to the defendant, but declined to condemn it as harmful.

That was a divisional decision.

In Schaefer v. St. Louis & Suburban Railway Co., 128 Mo. 64, 30 S. W. 331, an instruction, requested by the plaintiff, was refused, to the effect that if while the plaintiff was a passenger on defendant's car, the car was suddenly started, causing injury to plaintiff, then the burden is thrown upon defendant to show to the satisfaction of the jury that defendant exercised the utmost care in the management of the car, or that the accident occurred by reason of some cause not under the control of defendant. The court held the instruction was properly refused on the ground that it was not technically accurate.

That was also a divisional decision.

In just a few months after the Schaefer case was written, the court en banc, in Och v. Missouri, Kansas & Texas Railway Co., 130 Mo. 27, 31 S. W. 962, in disposing of criticisms made against instructions, said:

"While carriers of passengers are not insurers of their safety, and are not responsible when all reasonable care, skill and diligence, prudence and foresight have been employed, the law imposes upon

them the utmost care and skill in selecting and furnishing safe means of transportation, and to that end to provide safe coaches and appliances, necessary for that purpose, including every part and parcel thereof, which very prudent men would exercise under like circumstances, and when the injury to the plaintiff was shown to have been occasioned by the falling upon her head of a ventilating window from the coach in which she was riding, then it devolved upon the defendant to show by a preponderance of the evidence that the injury was caused by something not under its control, and not from any fault, want of care, or watchfulness upon its part. . . .

"It would seem, from the authorities cited, that the criticism of the instructions, in placing the burden of proof upon defendant, is not justified by the authorities."

It thus appears that the presumption arising under the *res ipsa loquitur* rule, as it has been recognized by our Supreme Court from the earliest times, in passenger cases, such as this, to which the rule has peculiar application, is not a mere inference such as may be drawn or not by the jury as they see fit, but it is a rebuttable presumption of law, regarded as necessary to the protection of the public against the negligence of persons in the exclusive control of instrumentalities of carriage involved in accidents causing personal injuries and having peculiar and usually exclusive knowledge of the causes of such accidents. And we do not understand that the court en banc, whose decisions we must follow, has ever receded from this view of the rule.

So, also, this appears to be the well-nigh universally accepted view in other jurisdictions. Thus, in 5 R. C. L. 74, in announcing the general rule, it is said that where an accident occurs, resulting in injury to a passenger, through a defect or a failure in the means of transportation, "a presumption of negligence arises as against the carrier," which "makes out a *prima facie* case" for plaintiff, and puts the burden "upon the defendant carrier to show the absence of any negligence on the part of itself or its agents whereby the accident occured, and that diligence and a careful observation of duty on its part could not have prevented the injury," and that "in the absence of any proof on the part of the carrier to rebut the presumption of negligence that arises against it in such a case, the presumption becomes conclusive." In support of this statement of the rule numerous cases are cited.

There can be no doubt that the plaintiff in the instant case was entitled to go to the jury under the *res ipsa loquitur* rule as applicable in passenger cases. [Hesemann v. May Department Stores Co., 225 Mo. App. 584, 39 S. W. (2d) 797; Hensler v. Stix, 113 Mo. App. 162, 88 S. W. 108; Luckel v. Century Building Co., 177 Mo. 608, 76 S. W. 1035; Roberts v. Schaper Stores Co., 318 Mo. 1190, 3

S. W. (2d) 241; Stroud v. Booth Cold Storage Co. (Mo. App.), 285 S. W. 165; Bartlett v. Pontiac Realty Co. (Mo. App.), 31 S. W. (2d) 279.]

It is obvious, too, that the giving of the instruction in question affords defendant no just ground for complaint. Surely, read in the light of the decisions of our Supreme Court, it is none too favorable to plaintiff.

The *res ipsa loquitur* rule is not grounded solely on an unusual occurrence resulting in injury. It is true that the unusual occurrence is a circumstance which speaks negligence because such things do not ordinarily happen without negligence. But the presumption of negligence is drawn not alone for that reason, but also for the further reason that the person called on to answer for the injury was in the exclusive control of the instrumentalities involved, and the evidence respecting the cause of the unusual occurrence is peculiarly and usually exclusively within his knowledge and power.

Defendant relies on McCloskey v. Koplar (Mo.), 46 S. W. (2d) 557. In that case plaintiff was injured by the falling over of a radiator. The court gave an instruction telling the jury that if the radiator fell over and upon plaintiff and injured him, then the presumption is that the falling over of the radiator was occasioned by some negligence of the defendant and the burden of proof is cast upon defendant to rebut this presumption of negligence and show *by a preponderance of the evidence* that the falling over of the radiator was not caused by the negligence of defendant. The court held the instruction reversibly erroneous for placing upon the defendant the burden of proof to rebut the presumption of negligence and to show *by a preponderance of the evidence* that the falling over of the radiator was not caused by the negligence of defendant. The opinion goes thus far and no further. This is obvious from the following excerpts from the opinion:

"The great weight of authority in other jurisdictions is to the effect that the burden cast on the defendant in a *res ipsa loquitur* case is the burden of *evidence,* not the burden of proof; and that the latter burden remains with the plaintiff throughout the trial as in any ordinary case. . . .

"But while this is so, the cases are not in complete accord as to whether the instruction imposing the 'burden of *proof*' on the defendant to meet the presumption of negligence is *prejudicially* erroneous. It will be remembered the Furnish Case, referred to a few paragraphs back, held it was not. But however that may be, when the instruction in terms merely shifts to the defendant the 'burden' or 'burden of proof' without saying more, the consensus of opinion is that, when the instruction further requires the defendant to rebut the presumption or inference of negligence *by a preponderance of the evidence,* it is reversible error."

The instruction condemned by Division One in Harke v. Haase, 75 S. W. (2d) 1001, was obviously condemned on the same ground. And the instruction suggested as appropriate there is no less favorable to the plaintiff than the instruction under review here.

As to the complaint made against the instruction under review here that it predicates liability on a finding that the escalator stopped, jerked, jarred and jolted, whereas there is no evidence that it stopped, it would suffice to observe that defendant thus complains of the instruction notwithstanding it by its own instruction submitted the case to the jury in the same manner. Aside from this, however, there is no merit in the complaint. There is no question that the evidence shows that the escalator violently jerked, jarred and jolted, and we think it is also sufficient to warrant an inference that it stopped. But the instruction hypothesizes the several actions of the escalator in the conjunctive, so that if there was error in the instruction, it was not harmful to the defendent. [See, Gettemeyer v. Thies (Mo. App.), 51 S. W. (2d) 868, and cases there cited. See, also, Roberts v. Schaper Stores Co. (Mo.), 3 S. W. (2d) 241, l. c. 243.]

The complaint that the instruction ought not to have been given because of the testimony of certain of its own witnesses to the effect that the electrical current for the operation of the escalator was supplied by another company, and that an interruption of the current by such other company would have caused the escalator to stop and jerk, is clearly without merit. Defendant erroneously assumes that the testimony of defendant's witnesses is conclusive. Besides, the testimony of one of defendant's witnesses tends to show that the interruption of the current would not cause the escalator to jerk. Moreover, we do not understand that a company operating instrumentalities as a carrier of passengers can escape liability under the *res ipsa loquitur* rule by procuring the current for the operation of such instrumentalities from another company.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.