DOROTHY CAMPBELL, A MINOR, JAMES CAMPBELL, A MINOR, AND GEORGE CAMPBELL, A MINOR, BY LUCRETIA JONES, THEIR NEXT FRIEND, RESPONDENTS, v. THE TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, A CORP., APPELLANT.—126 S. W. (2d) 915.

St. Louis Court of Appeals.   Opinion filed April 4, 1939.

*Arthur F. C. Blase* and *Durward S. Brown* for respondents.

*T. M. Pierce, J. L. Howell* and *Walter N. Davis* for appellant.

McCULLEN, J.—This suit was brought on behalf of the three minor respondents above named, as plaintiffs, by their next friend, against appellant, as defendant, to recover damages for the death of the father of said minors. The cause was tried before the court and a jury and resulted in a verdict and judgment in favor of plaintiffs and against defendant in the sum of $3,000. Defendant has duly appealed from said judgment.

The second amended petition of plaintiffs, upon which the case was tried, alleged that Dorothy Campbell, James Campbell and George Campbell are minors of the ages, respectively, of seventeen, sixteen, and twelve years; that Lucretia Jones was duly appointed their next friend by the Circuit Court of the City of St. Louis, Missouri; that plaintiffs are the only children of James Campbell, who died in the City of St. Louis, Missouri, on June 4, 1934, leaving no wife or widow of a deceased child surviving him; that, on June 4, 1934, defendant operated a freight train, consisting of a locomotive and a number of freight cars, in a northerly direction upon its railway track upon McKissock Avenue near the intersection of said McKissock Avenue and John Avenue, both open public streets in the City of St. Louis, Missouri; that, at said time and place, defendant negligently suffered and permitted a door of one of its freight cars in said train to project and swing outwardly from the side of said freight car while said car and said train were in motion; that said James Campbell, while lawfully walking in a northerly direction upon McKissock Avenue, was violently struck on the head and body by said projecting swinging car door, and thrown against the side of the train with great force and vio-

lence, whereby he was caused to sustain multiple fractures of the skull and lacerations of the brain, as a direct and proximate result of which injuries he died on June 5, 1934; that said Campbell's injuries and death were directly and proximately caused by the aforesaid negligence of defendant. Plaintiffs prayed judgment against defendant in the sum of $10,000.

· The answer of defendant to plaintiffs' second amended petition contained a general denial, followed by allegations to the effect that the injuries and death of Campbell were occasioned by his own negligent acts and without any fault on the part of defendant. Facts were alleged in the answer charging that Campbell was a trespasser on the train and was injured when he attempted to alight from one of the cars while it was in motion.

Defendant further alleged in its answer that the deceased James Campbell left surviving him a widow, who, as such widow, had within six months after the death of said Campbell filed a suit in the Circuit Court of the City of St. Louis, and had thus appropriated the cause of action for the death of said Campbell, thereby abating this suit brought by the minors herein; and prayed that this action be stayed and prosecution thereof be enjoined. This last-mentioned charge in defendant's answer, challenging the right of the minors to bring this suit, was abandoned in the trial court and is not before us on this appeal.

The reply of plaintiffs was a general denial.

The petition of plaintiffs is based upon the doctrine *res ipsa loquitur*, charging that defendant permitted a door of one of its freight cars, while defendant's train was in motion proceeding along McKissock Avenue, a public street, to project and swing outwardly from the side of its freight car, striking James Campbell on the head and body with such force as to cause him injuries from which he died the next day.

Defendant has briefed and argued but one point in this court, and that is that the court erred in giving and reading to the jury, over defendant's objections and exceptions, instruction number one requested by plaintiffs. Therefore, it will not be necessary to review the evidence further than to show the circumstances under which James Campbell sustained the injuries which caused his death.

It appears from the evidence that about 2:30 p. m. on June 4, 1934, defendant operated a freight train northwardly along McKissock Avenue on its east track, known as the northbound track.

Roosevelt Stokes, a witness for plaintiffs, testified that he saw James Campbell, the deceased, walk out of the gate at his home, which was about ninety feet south of John Avenue, an east and west street intersecting McKissock Avenue; that, after Campbell latched the gate, he walked about ten feet north in the direction in which the train was moving; that, as the train was passing Campbell while he walked along McKissock Avenue, the door of a refrigerator car in the train

about one hundred feet south of Campbell was open, and, as the train moved northwardly, the refrigerator door of the car struck Campbell in the back and around the shoulder, causing him to fall in a spinning manner; that the refrigerator car door was projecting out about two and a half feet from the side of the car; that the distance from the gate of Campbell's home to the east track was about eighteen feet; that, for about seven or eight steps, Campbell walked near to the fence at his home, but after walking that short distance he angled toward the train and got alongside thereof; that the door which struck Campbell was on a refrigerator car which was about fifteen or twenty cars from the rear of the train.

·Everett Roberts, a next door neighbor of James Campbell, testified that he came out of the Federal Paper Stock Company just north of John Avenue on McKissock Avenue and saw James Campbell lying about two feet from the railway track, and it looked to the witness like Campbell's skull was mashed in, and blood was running out of his mouth and nose; that the witness had left Campbell only a short while before when the witness went into the Federal Paper Stock Company. The witness testified that McKissock Avenue was a common dirt and cinder street, and cinder sidewalk.

Tom Griffin testified, on behalf of plaintiffs, that he knew James Campbell and saw him on June 4, 1934, along by Campbell's home on McKissock Avenue. The witness testified that, while he was going north, he met Campbell on McKissock Avenue while the train was passing; that, after he passed Campbell, he heard a noise; somebody was hollering, and he turned around and saw a yellow door on a refrigerator car in the train swinging backwards and forwards; that the door projected out from the side of the train a distance of nearly three feet; that Campbell was down at that time; that the witness went back to where Campbell was lying, and saw that Campbell's skull was mashed in and blood was coming out of his mouth and nose.

Campbell was taken to the St. Louis City Hospital No. 2, where he died the next day.

Dr. J. Liebmann testified as a witness for plaintiffs, and, in answer to a hypothetical question embodying a description of the injuries sustained by Campbell, stated that in his opinion the injuries described caused Campbell's death.

Defendant produced a number of witnesses, among them members of its train crew and inspectors of its trains, including the locomotive engineer on the train in question, the foreman of the switch crew, and a crossing watchman. They gave testimony showing that the doors of the cars making up the train had been properly inspected immediately prior to the time it was operated along McKissock Avenue and immediately after Campbell was injured, and that there were no car doors swinging open on the train from the time it left defendant's yards in Madison, Illinois, and the time it reached Carrie Avenue

in St. Louis, many city blocks north of the place where Campbell was injured. Defendant's evidence tends to show that the injuries sustained by Campbell were not caused by any negligence on the part of defendant. However, in view of the fact that defendant does not contend in this court that the trial court erred in refusing to give its peremptory instructions in the nature of demurrers to the evidence, which it requested the court to give, it is unnecessary to set forth in detail defendant's evidence.

That portion of plaintiffs' instruction number one against which defendant's complaint is directed told the jury that, if they found and believed from the evidence that at the time and place mentioned, James Campbell was walking in a northerly direction along McKissóck Avenue, between East Grand Avenue and John Avenue, and while so doing he was struck by a projecting or swinging door of one of defendant's freight cars; and that he was thereby thrown against and under defendant's train and injured; and that as a direct result of his said injuries, if any, he died on June 5, 1934, ''then the presumption is in the absence of evidence to the contrary, that such projection or swinging of said door, if any, and the said James Campbell's consequent injury and death, if you so find, were due to the negligence of the defendant, and then your verdict should be for the plaintiffs, if you find and believe from the evidence that said James Campbell was exercising ordinary care for his own safety, unless you further find from the evidence that the projecting or swinging of said door, if any, was not due to negligence of the defendant; and if you find from the evidence that said James Campbell died from injuries suffered as a direct result of being struck by said door projecting or swinging from the side of said car, if any, the burden would be on the defendant to show that said injuries, if any, and the death of said James Campbell occurred without negligence on the part of the defendant.''

Defendant contends that the foregoing instruction is in direct conflict with the ruling of the Supreme Court in the case of McCloskey v. Koplar, 329 Mo. 527, 542, 46 S. W. (2d) 557, 563, 564, because it placed upon defendant the *burden* of exculpating itself from the charge of negligence, whereas, under the ruling in that case, the burden was upon plaintiff throughout the case to prove by the preponderance of the evidence that defendant was guilty of negligence.

In the McCloskey case, *supra*, the majority of opinion discussed the ''burden of proof'' and the ''burden of evidence,'' and held that the ''burden of proof'' means the duty of making an evidentiary showing which the law requires of the party having the affirmative in order to win a verdict from the jury. The court stated that the ''burden of evidence'' is the burden of making a *prima facie* showing as to each fact necessary to establish a *prima facie* case; that, when plaintiff has made a *prima facie* case, he has discharged his burden of evidence and that burden then shifts to the defendant to produce competent con-

troverting evidence which, if believed, will offset plaintiff's *prima facie* case; and if that is done, the defendant has met the burden of evidence cast on him and has made a *prima facie* defense, whereupon the burden swings back to plaintiff to bring forward evidence in rebuttal, and so on; but that during all this time the "burden of proof," the risk of nonpersuasion, remains with the plaintiff except as to affirmative defenses. The court said that the "burden of evidence" is simply the burden of making or meeting a *prima facie* case.

The instruction in the McCloskey case, after hypothesizing the facts which brought the case within the doctrine *res ipsa loquitur*, went on to say that, if the jury found such facts, then the presumption was that the falling over of the radiator involved therein was occasioned by some negligence of defendants, their agents or servants, "and the burden of proof is cast upon defendants to rebut this presumption of negligence and show *by a preponderance of the evidence* that the falling over of said radiator was not caused by negligence of defendants, their agents or servants, and unless you further find from the evidence that the falling over of said radiator could not have been prevented by defendants, their agents or servants, by use of ordinary care, then your verdict must be in favor of plaintiff and against defendants." (Italics ours.)

It will be noted that the instruction in the case at bar does not require the defendant to show "by a preponderance of the evidence" that it was not guilty of negligence. In this respect it is different from the instruction in the McCloskey case which was condemned. In that case the court did not specifically pass upon the question as to whether or not an instruction is prejudicially erroneous as distinguished from being merely erroneous where, as here, the instruction does not require the defendant to exculpate itself by "a preponderance of the evidence" from the charge of negligence. However, we believe the reasoning of the majority opinion in the McCloskey case, as well as the direct holding that the burden is on plaintiff throughout the case to prove by a preponderance of the evidence that defendant was negligent necessarily leads to the conclusion that an instruction such as the one in the case at bar is prejudicially erroneous. In this case the jury were told that, if the deceased died from the injuries suffered as a direct result of being struck by the projecting or swinging door, "the burden would be on the defendant to show that said injuries, if any, and the death of said James Campbell occurred without negligence on the part of the defendant." The instruction puts the burden of proof upon the wrong party, and in this respect is in conflict with the McCloskey case wherein the court said that an instruction which places the burden of proof on the wrong party is prejudicially erroneous because it puts the risk of nonpersuasion, or the duty of convincing the jury, on the opposite party who, according

to law, has the right to prevail even if the evidence is merely in equipoise so that the jury are left in doubt.

Plaintiffs herein point out that this court, in the case of Crenshaw v. St. Louis Public Service Co. (Mo. App.), 52 S. W. (2d) 1035, had before it an instruction similar in language to the instruction complained of in the case at bar, and that this court held such instruction was not prejudicially erroneous. Plaintiffs further point out that the defendant in the Crenshaw case applied to the Supreme Court for a writ of *certiorari* which was denied by that court. The Supreme Court did not write an opinion in denying the application for *certiorari*. It would therefore be idle to indulge in assumptions with respect to the reasons for the denial of *certiorari* in that case. However, the Crenshaw case was a case involving a passenger and a common carrier, which, we believe, clearly distinguishes it from the case at bar even though the decision of this court in the Crenshaw case was not based upon the fact that it was a passenger case.

In Hartnett v. May Dept. Stores Co., 231 Mo. App. 1116, 85 S. W. (2d) 644, which involved a passenger on a public escalator and therefore was a common carrier and passenger case, this court held that the presumption arising under the *res ipsa loquitur* rule as recognized by our Supreme Court from the earliest times in passenger cases, to which the rule has peculiar application, is not a mere permissible inference such as may be drawn or not drawn by the jury as they see fit, but is a rebuttable presumption of law; that such a presumption of law is regarded as necessary to the protection of the public against the negligence of persons in exclusive control of instrumentalities of carriage involved in accidents who have peculiar and, usually, exclusive knowledge of the causes of such accidents. The case at bar not being a passenger case does not come within the rule applied by our Supreme Court in the very large number of passenger cases cited in the Hartnett case, *supra*. This case belongs in the class to which the McCloskey case is clearly applicable.

Since the decision of our Supreme Court in banc in the McCloskey case, Division No. 1 of that court has held in a *res ipsa loquitur* case, in which it cited the McCloskey case, that the "burden of showing" nonnegligence in such a case does not shift to defendant at any stage of the case, but that, on the contrary, the burden of proving defendant's negligence remains on plaintiff throughout the case. [Tabler v. Perry, 337 Mo. 154, 85 S. W. (2d) 471.]

In Harke v. Haase, 335 Mo. 1104, 75 S. W. (2d) 1001, an automobile was shown to have run onto a sidewalk and injured plaintiff, a pedestrian. The *res ipsa loquitur* rule was held to apply. An instruction was given which told the jury that defendant motorist was presumed to be negligent, and if the jury found that he was negligent, the verdict should be for plaintiff; and that the burden of proof was on the defendant to overcome such presumption by a preponderance

of the evidence, and to establish that he was not negligent. The court followed the McCloskey case and held that the instruction was prejudicially erroneous and constituted reversible error. The court held that plaintiff had the burden of proof of showing that defendant was guilty of some negligence which caused his injury, but that he was entitled to have the jury know that this may be proven by circumstantial evidence. The court said that proper instructions in a *res ipsa loquitur* case are a matter of great interest and controversy among the members of the bar of this State, and suggested a form of instruction for use. [See Harke v. Haase, 335 Mo. 1111, 75 S. W. (2d) 1004.]

In the case at bar the court gave an instruction, at the request of defendant, wherein the jury were told that "the burden of proof in this case is upon the plaintiffs to prove by the preponderance, that is the greater weight of the credible evidence, that defendant was guilty of negligence as defined in the instructions given to you by the court in this case, and unless the evidence herein so shows, your verdict must be for the defendant."

The above instruction correctly declared the law on the question of the burden of proof and placed that burden upon the plaintiffs throughout the case, whereas the instruction given for plaintiffs, which we have been considering, told the jury that, if they found from the evidence that James Campbell died from injuries suffered as the direct results of being struck by the door projecting or swinging from the side of the car, the burden would be on the defendant to show that said injuries and death occurred without negligence on the part of the defendant. The instruction given for plaintiffs was, therefore, in conflict with the one given for defendant, and even though plaintiffs' instruction did not mention "the burden of proof," it did put upon defendant the "burden to show" that defendant was not negligent. Under the McCloskey case as well as the later Tabler case, *supra*, no such burden rested upon defendant. Defendant's correct instruction did not have the effect of curing plaintiff's incorrect instruction as to the "burden" mentioned therein. On the contrary, the giving of the two instructions resulted in a conflict very confusing to the jury and constituted error. [State ex rel. Long v. Ellison et al., 272 Mo. 571, 199 S. W. 984; Nagy v. St. Louis Car Co. (Mo.), 37 S. W. (2d) 513.]

In conformity with our constitutional duty to follow the last decision of the Supreme Court on the question, we hold that the instruction herein was prejudicially erroneous. The judgment is therefore reversed and the cause remanded for a new trial. *Hostetter, P. J.*, and *Becker, J.*, concur.