242 S.W.2d 473 (1951)
JONES
v.
TERMINAL R. R. ASS'N OF ST. LOUIS.
No. 42271.
Supreme Court of Missouri, Division No. 2.
September 10, 1951.
Motion for Rehearing or Transfer to Denied October 8, 1951.
*474 Chelsea O. Inman and Charles E. Gray, St. Louis, for appellant.
Warner Fuller, Arnot L. Sheppard, George P. Mueller, and John P. Montrey, all of St. Louis, for respondent.
Motion for Rehearing or Transfer to Court en Banc Denied October 8, 1951.
BARRETT, Commissioner.
In July 1945 the plaintiff, Robert C. Jones, then seventeen years old, was employed by the Terminal Railroad Association. It was his duty to load hand trucks in the basement with mail, push the trucks onto one of the elevators and take the mail to the "topside." On July 19th he was injured on one of the elevators after he had delivered a truckload of mail and placed the truck on the elevator for the purpose of returning to the basement. Upon the trial *475 of his action for $13,500 damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the jury returned a verdict for the Terminal Railroad and Robert appeals, claiming that the trial court prejudicially erred in the admission of evidence and in instructing the jury. The Terminal claims that there was no prejudicial error either in the admission of evidence or in the instructions and in any event that one of the instructions complained of could not be prejudicially erroneous because upon the record Robert was not entitled to submit the defendant's liability upon the res ipsa loquitur doctrine.
Robert was not operating the elevator; it was stipulated that another young man, Vincent Pijut, pulled the chain that started the elevator, although Robert said that Pijut was not on the elevator when he was injured but was in the basement. In describing the occurrence Robert said, "As the elevator started to descend it seemed to give a jump, a jerk. I lunged forward. Naturally, I didn't want to fall; there is about a fifteen foot drop, so I grabbed the first thing I could get a hold of. When I grabbed it I got hold of the steel gate. As the elevator went down this gate swung up. It had me strapped across here (indicating) against the concrete floor. I was hanging on it. The elevator went on down there. I pulled this hand loose, * * *. I got this left free (indicating) to pull myself up, to get out of the elevator. * * Just as I reached this hand up my legs were hanging underneath the floor, because I was in position to get myself all the way up, it caught me then, right as it comes up like that (indicating). My legs were like that (indicating). * * * I never knew it was coming up. If I had, I would have got my legs out of there." On cross examination he said, "Well, as the elevator was descending down, it sort of was closing, you would call it, jerking or settling down. It gave a jump like that (illustrating), and lunged forward, was the way I went, but the elevator was sort of settling down. It gave a little jerk, hard enough to throw me off balance." In short, it was Robert's testimony that the elevator jumped or jerked as it descended and threw him off balance and to avoid falling he caught hold of the safety gate and while he was entrapped by the gate the elevator unexpectedly ascended and crushed his legs.
It is first urged by the Terminal that Robert was not entitled to a res ipsa loquitur submission of his cause because the described circumstances do not constitute "such an unusual occurrence as would warrant a jury in inferring that the misadventure would not have happened except for defendant's negligence." It is said in this connection that there is no proof that the defendant's knowledge of the cause of Robert's injury was superior to his knowledge of the cause. But res ipsa loquitur has been applied to the unexplained starting of an elevator by a fellow employee and its subsequent fall. Meade v. Missouri Water & Steam Supply Co., 318 Mo. 350, 300 S.W. 515. The rule has been applied to the sudden jerk and jolt of busses and streetcars, Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W.2d 506; Semler v. Kansas City Public Service Co., 355 Mo. 388, 196 S.W.2d 197, as well as to the sudden jerk of an escalator, Hartnett v. May Department Stores Co., 231 Mo.App. 1116, 85 S.W.2d 644, and its stopping with a sudden and unusual jerk. Hesemann v. May Department Stores Co., 225 Mo.App. 584, 39 S.W.2d 797. In Klebe v. Parker Distilling Co., 207 Mo. 480, 105 S.W. 1057, 13 L.R.A.,N.S., 140, a cable broke and the elevator fell but the court held, even though the occurrence was one which according to common experience does not usually occur except by reason of some negligence on the part of the master, that the elevator and instrumentalities employed by the defendant were not peculiarly within its knowledge and control so that the defendant was in a better position than the plaintiff to explain the cause of the accident. That case has been explained upon the theory that the employee "as a rule, has as much or more knowledge of the place where and the instrumentalities with which he works as the master, and is in most instances acquainted with the persons who own, operate, manage or control the premises or instrumentalities involved" and the court "expressed the opinion that *476 the evidence in the present case indicated that neither the business premises nor the elevator itself was `peculiarly within (defendant's) knowledge' or under its control and on that account it could not be said that defendant was in a much better position to explain the cause of the accident than plaintiff was." Annotation 169 A.L. R. 953, loc. cit. 970. But there the plaintiff was a mature adult who had operated the elevator in question for more than four years. In this case Robert was but seventeen years of age and had been employed by the Terminal but nine or ten days prior to the date of his injury and so it is not possible to say that he was in a position, comparable to his employer's, to explain the cause of the sudden jerk or unexplained ascension of the elevator. In addition in this case the employees had no duties with respect to the elevators except to use them. There were several elevators and the defendant's evidence shows that specialized employees maintained, repaired and serviced them and inspected them every two hours. As was said of the unexplained starting of a sausage grinder in Gordon v. Muehling Packing Co., 328 Mo. 123, 133-134, 40 S.W.2d 693, 697, "the automatic and abnormal starting of a machine when it ought to remain at rest is evidence of negligence on the part of the master, and, if the further facts appear that the installation, upkeep, and duty to inspect and repair the machine and appliances are with the master, and not with the injured servant, who is ignorant of and without opportunity to know the mechanism and how same is operated, and when the defect and cause thereof are peculiarly within the knowledge of the master, then the doctrine mentioned applies." The defendant claimed and its evidence tended to show that there was no negligence on its part or on the part of any of its employees but its evidence shows that all the possible knowledge of the elevator, its mechanism and operation and any possible explanation of any unusual occurrences were within the defendant's superior knowledge and not within the plaintiff's knowledge.
In order to further illustrate that the doctrine of res ipsa loquitur is not applicable to the facts of this case, the defendant points to that part of Robert's testimony in which he described the operation of the elevators. He said, "If you take these lines there, hanging there, that raise the elevatoryou get a hold of them and pull down in the usual mannerthey will ascend nice and proper, the way they should. If you give a real tough jerk on them you will take off with a bang, and it will seem to settle down." As we have said, it was stipulated that a fellow employee, Pijut, pulled the chain which opened the valve and started the elevator on its descent. It is then argued from these facts that the cause of the elevator's starting to descend is known and that it was the result of an "intentional act" on Pijut's part, and therefore the doctrine is inapplicable. The cases relied upon by the defendant do not illustrate that "intentional human action" necessarily makes the doctrine inapplicable or establish any such principle as a part of the rule. In Charlton v. Lovelace, 351 Mo. 364, 173 S.W.2d 13, 20, a motor boat overturned and it was held, in the circumstances, that res ipsa loquitur did not apply. In pointing out the various reasons why under the proof the doctrine was inapplicable the court did say, among other things, "In other words, did the overturn of the boat result from the voluntary act of a third party?" In Hart v. Emery-Bird-Thayer Dry Goods Co., 233 Mo.App. 312, 118 S.W.2d 509, it was held that the doctrine was inapplicable when a pile of awnings, which customers could have disarranged, fell from a counter. In both cases some third person, not an agent of the defendant, may have been the cause of the occurrence but the cases do not hold that a negligent intentional act on the part of an employee is a defense or makes inapplicable the res ipsa loquitur doctrine. There is no evidence in this case that Pijut intentionally started the elevator with a "jerk" or that he intentionally caused it to unexpectedly and suddenly ascend. In this action under the Federal Employers' Liability Act it could be pointed out, without determining its effect, that the fellow-servant rule has been abolished. Southern Ry. Co. v. Derr, 6 Cir., 240 F. 73, 75. It is our *477 view of the record that it meets the essential requirements of the doctrine that "(a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." McCloskey v. Koplar, 329 Mo. 527, 533, 46 S.W.2d 557, 559, 92 A.L.R. 641; Meade v. Missouri Water & Steam Supply Co., supra; Hartnett v. May Department Stores Co., supra.
One of the defendant's witnesses, an elderly gentleman, said that on Robert's first day he attempted to teach Robert how to load the mail trucks and operate the elevators. And on that first day he said, "When the elevator starts down, it gets down so far and then the gate starts up. He gets that cross-bar with both hands this way (indicating) of this gate and he swung over and the elevator went clear to the floor. I said to him, `Say, young man, these elevators are dangerous; they will kill you if you monkey with them.' He jumped over there clear down to the platform, right straight down." Another witness testified that on another occasion Robert grabbed the iron bar across the gate as the elevator descended and that he warned him of the danger. It is urged by the plaintiff that the court prejudicially erred in admitting this testimony for the reason that it does not tend to rebut the testimony that the elevator descended in a jerking and unusual manner. It is argued that evidence of habitual or specific acts of negligence is not admissible to prove negligence at another time than that of the accident claimed to have been caused by negligence. In short, the appellant invokes the statement, "The courts have generally ruled inadmissible on the issue of negligence on the part of defendant in a negligence action, or of contributory negligence on the part of plaintiff, at the time of the injury complained of, evidence of similar prior acts of negligence." McComb v. Vaughn, 358 Mo. 951, 958, 218 S.W.2d 548, 552. That case concerned, however, an admission in a statement by the deceased that prior to the accident in question he had driven his motorcycle without lights. It was held that the collateral issue was not sufficiently cogent as proof of the main issue to be admissible. As a matter of fact there is no hard and fast rule against the trial of collateral issues or the admission of evidence of collateral matters, 32 C.J.S., Evidence, § 578, page 433, it is a question of relevancy, cogency, and of probative force. Evidence of similar acts is inadmissible when irrelevant to the issues and admissible when relevant. 32 C.J.S., Evidence § 580, page 435. Exclusion of evidence of collateral matters is demanded when the evidence introduces many new controversial points and a confusion of issues would result, or there would be an unfair surprise or an undue prejudice disproportionate to the usefulness of the evidence. 2 Wigmore, Evidence, Secs. 442-443, 458. As Judge Goode said, "the collateral act may be proved if the inference may be drawn from it that the act charged was or was not negligent; * * * the admissibility of proof of the collateral act depends finally on the cogency of the proof it affords regarding the main issueon whether it is so closely related to the main issue that its value as evidence is high enough to justify disregarding the objections to the reception of proof of collateral acts." Calcaterra v. Iovaldi, 123 Mo.App. 347, 350, 100 S.W. 675, 676. It must be borne in mind, in this connection, that this is a res ipsa loquitur case and the defendant is entitled to explain the occurrence and demonstrate that it was not due to negligence either with respect to the appliance or any act by one of its employees. Payne v. Carson, Mo.Sup., 224 S.W.2d 60. Assuming that the evidence of these two witnesses concerns what is often called a "collateral" matter, the testimony is not subject to the objection of injecting manifold controversial and confusing side issues and there was no element of undue surprise or inability to readily meet the issue. Blackwell v. J. J. Newberry Co., Mo.App., 156 S.W.2d 14, 20. The issue was simple and the plaintiff met it and he was the only other person who could. He said that he had never seen *478 the two witnesses and that most certainly he had never grabbed hold of the bar on the gate as the elevator descended. That was the end of that issue and if the jury believed the defendant's evidence it tended to show that the occurrence was not due to a negligent cause for which the defendant would be liable but was due to voluntary action on Robert's part (Prosser, Torts, p. 295) and it was not prejudicially erroneous in the circumstances to admit the testimony of these two witnesses. Preston v. Hannibal & St. J. Ry. Co., 132 Mo. 111, 33 S.W. 783.
The defendant's liability was hypothesized in an instruction which first set forth the defendant's duty: "The Court instructs the jury that under the law it was the duty of the defendant, Terminal Railroad Association * * * to exercise ordinary care to furnish its employees with a reasonably safe place in which to work and with reasonably safe appliances with which to work and a failure to perform these duties, if defendant did so fail, would constitute negligence on the part of the defendant, as that term is used in these instructions." The instruction defined "ordinary care" and then hypothesized the facts of Robert's employment and duties and the circumstances of his injury. In hypothesizing liability the instruction, in part, said, "that when said elevator started to descend the same started downward with a sudden and unexpected jerk and movement and as a direct result of said sudden and unexpected jerk and movement, if any, plaintiff was thrown forward * * * and before he had reasonably sufficient time to reach a place of safety the said elevator suddenly and unexpectedly and in an unusual manner rose and caught plaintiff's body * * * then such facts * * * would constitute sufficient circumstantial evidence to warrant you in finding that the sudden, unexpected and unusual movement of the elevator, if any, and the injuries to the plaintiff, if any, were directly caused by some negligence on the part of the defendant, and you may so find, unless you find and believe from other facts and circumstances in evidence that the occurrence was not due to any negligence on the part of the defendant." Against this submission the court gave this instruction upon the request of the defendant: "You are instructed that before you can render a verdict in favor of plaintiff Jones, you must find from the greater weight of the believable evidence (1) that the elevator in question was defective, (2) that defendant railroad company knew, or by the exercise of reasonable care, could have known that it was defective, * * * (3) that the defect, if any, could have been remedied * * * before plaintiff's injuries, * * * (4) but was not, and (5) that plaintiff Jones was, in whole or in part, as a direct result of such acts and failure, if any, injured. Unless you so find, your verdict herein should be for defendant railroad company."
The appellant insists that this instruction is prejudicially erroneous among other reasons, because it limited the field of permissible inferences and permitted the jury to consider only the question of whether the elevator was defective and whether the defendant had knowledge of the defective condition in time to have repaired it. It is urged that the instruction in effect excludes from the jury's consideration the negligence of one of the defendant's employees in starting the elevator, both in descent and ascent. The respondent insists that the instruction is not prejudicially erroneous and if so that the plaintiff invited the error because he submitted his case upon safe place to work and safe instrumentality. Other questions concerning the instruction are briefed by both parties but these point up the essential problem.
The defendant in a res ipsa loquitur case is entitled to submit in an instruction the evidence adduced by him in explanation of the occurrence, especially evidence explanatory of the res ipsa loquitur facts which show no negligence. Payne v. Carson, supra. For example he may combine with a burden of proof instruction a hypothesization that the plaintiff was not a passenger on the streetcar and that the streetcar "did not give a sudden, violent and unusual jerk and jar." West v. St. Louis Public Service Co., Mo. *479 Sup., 236 S.W.2d 308, 311. But a defendant's verdict directing instruction in a res ipsa loquitur case must enumerate, if that is the way it is to be done, and require a finding for the defendant on every reasonable ground of negligence on its part, it may not limit or restrict the finding to but one of several permissible inferences of negligence. Gordon v. Muehling Packing Co., 328 Mo., loc. cit. 141, 40 S.W.2d loc. cit. 701; Biehle v. Frazier, 360 Mo. 1068, 232 S.W.2d 465. In La Vigne v. St. Louis Public Service Co., Mo.Sup., 181 S.W.2d 541, 542, the defendant hypothesized against a res ipsa loquitur submission that it only agreed "that its operator in charge of its car would exercise the highest degree of care for the safety of plaintiff * * *." The facts in that case, as in this one, did not exclude all other hypotheses except negligence on the part of the motorman and so it was held that the instruction was prejudicially erroneous. The plaintiff relied upon a jar or jolt and the occurrence could have been due to a defective track or streetcar as well as negligence on the part of the motorman, and the instruction, in effect, excluded from the jury's consideration negligence with reference to the track or streetcar. In Nix v. St. Louis Public Service Co., Mo.App. 228 S.W.2d 369, the defendant's instruction hypothesized that a truck suddenly drove in front of a bus and created an emergency as against a res ipsa loquitur submission. It was held that the instruction was erroneous because it did not require a finding that there was no negligence on the part of the defendant in respect to other duties imposed upon it which the jury might reasonably find were violated and contributed to cause the plaintiff's injuries. And so it is here, the instruction limits the plaintiff's recovery to a finding of a known defective appliance and excludes negligence on the part of an employee and is therefore plainly erroneous. Gordon v. Muehling Packing Co., supra; Biehle v. Frazier, supra; Stofer v. Harvey, Mo. App., 204 S.W.2d 587.
We have set forth the greater part of the plaintiff's instruction and it is obvious that the first part of the instruction hypothesizes the defendant's general duty to the plaintiff to furnish a safe place to work and safe appliances, 2 Restatement, Agency, Secs. 493, 503, and the breach of that duty relied upon and hypothesized as a basis of liability, consisted in suddenly and unexpectedly starting the elevator with a jerk and its unexpected ascension and the error of limiting liability in the defendant's instruction was not selfinvited. Gordon v. Muehling Packing Co., supra; Nix v. St. Louis Public Service Co., supra; Clason v. Lenz, 332 Mo. 1113, 61 S.W.2d 727, 732.
The instruction given on behalf of the defendant was prejudicially erroneous and for that reason the judgment is reversed and the cause remanded.
WESTHUES and BOHLING, CC., concur.
PER CURIAM.
The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.
All concur.